Thomas **WILKES**, Libelant,

v.

**H. M. WRANGELL & CO., A/S Skibs A/S Corona, Respondents.**

No. 1917.

United States District Court
D. Delaware.

Nov. 14, 1968.

Henry A. Wise, Jr., Wilmington, Del., for libelant.

Rodney M. Layton and David T. Dana, III, Richards, Layton & Finger, Wilmington, Del., for respondents.

## OPINION

STEEL, District Judge.

On April 21, 1964, libelant, a citizen of Delaware, brought an action in the Southern District of New York under the Admiralty and Maritime jurisdiction of the United States against respondents, which were business organizations existing under the laws of Norway. The complaint alleged that on or about January 25, 1961, libelant was injured when he slipped and fell while discharging cargo from the S. S. Corona, when it was moored at a pier in Wilmington Marine Terminal at Wilmington, Delaware. Libelant, according to the complaint, was an employee of Wilmington Stevedores, Inc., which had been employed by the respondents, among others, to discharge the cargo. Libelant's injury was alleged to have occurred during the performance of his duties as a result of the negligence of respondents, and their failure to provide him with a seaworthy vessel, safe appliances and a safe place to work.

After libelant made several unsuccessful attempts to serve respondents in the Southern District of New York, the libelant was advised that service would be accepted by respondents only if the action were transferred to Wilmington or Philadelphia. Accordingly, upon libelant's application, which was consented to by respondents, an order was entered under 28 U.S.C. § 1404(a) which transferred the case to this district. Thus, although the application to transfer was made by libelant, it was in fact sought by the respondents.

Respondents have answered the complaint and have denied that they were in any way culpable. As an affirmative defense respondents allege that the action is barred by laches.

Respondents have moved for summary judgment under Fed.R.Civ.P. 56 on the ground that the pleadings, affidavits, answers to interrogatories and depositions on file show that respondents are entitled to judgment as a matter of law.

The test of laches is both unreasonable delay and consequent significant prejudice. Gutierrez v. Waterman S. S. Corp., 373 U.S. 206, 215, 83 S.Ct. 1185, 10 L.Ed.2d 297 (1963), reh. denied, 374 U.S. 858, 83 S.Ct. 1863, 10 L.Ed.2d 1082 (1963); Claussen v. Mene Grande Oil Co., 275 F.2d 108, 113 (3d Cir.1960).

Generally, in determining what constitutes laches founded on undue and prejudicial delay, a court in a suit in admiralty will resort to the time limitation fixed by the analogous state statute of limitations. Conty v. States Marine Lines, Inc., 355 F.2d 26, 27–28 (2d Cir. 1966); Kane v. Union of Soviet Socialist Republics, 189 F.2d 303, 305 (3d Cir.1951), cert. denied, 342 U.S. 903, 72 S.Ct. 292, 96 L.Ed. 676 (1952). To negate the inference that delay in bringing suit beyond the period fixed by the analogous state statute of limitations has been both unreasonably long as well as significantly injurious to the respondent, a libelant is required to make an affirmative showing to the contrary. Claussen v. Mene Grande Oil Co., supra, 275 F.2d at 111; Oroz v. American President Lines, Ltd., 259 F.2d 636, 639 (2d Cir.1958), cert. denied, 359 U.S. 908, 79 S.Ct. 584, 3 L.Ed.2d 572 (1959); Kane v. Union of Soviet Socialist Republics, supra, 189 F.2d at 304; Marshall v. International Mercantile Marine Co., 39 F.2d 551, 552 (2d Cir.1930)

When there has been a change of venue under 28 U.S.C. § 1404(a), the transferee court is obliged to apply the state law which the court from whose jurisdiction the case has been transferred would apply. "A change of venue under § 1404(a) generally should be, with respect to state law, but a change of courtrooms." Van Dusen v. Barrack, 376 U.S. 612, 639, 84 S.Ct. 805, 821, 11 L.Ed.2d 945 (1964).

Libelant commenced his action in New York. When the cause of action arose, the State of New York had two limitations statutes relating to personal injury actions: a three-year statute governing all actions based solely on negli-

gence, N.Y.Civ.Prac.Act. § 49(6), and a six-year statute governing all other personal injury actions. N.Y.Civ.Prac.Act § 48(3). The appropriate statute for determining whether a libel based solely on a claim of unseaworthiness is barred by laches is the six-year general personal injury statute. Conty v. States Marine Lines, Inc., supra, 355 F.2d at 28.[1] This would appear to be equally true where the libel is based both upon claims of unseaworthiness and of negligence since the three-year statute is applicable by its terms only to actions based *solely* on negligence.

Respondents assert that under the circumstances of this case the Southern District of New York would not apply the six-year statute of New York as the measure of laches but would look to the two-year statute of limitations of Delaware. This argument is premised upon the "borrowing" statute of New York. New York Civil Practice Law and Rules § 202, which was at all times relevant, provided:

> "An action based upon a cause of action accruing without the state [of New York] cannot be commenced after the expiration of the time limited by the laws of either the state or the place without the state where the cause of action accrued, except that where the cause of action accrued in favor of a resident of the state the time limited by the laws of the state shall apply."

The pertinent Delaware law of limitations is 10 Del.C. § 8118 since the cause of action arose in Delaware where libelant resides. It provides:

> "No action for the recovery of damages upon a claim for alleged personal injuries shall be brought after the expiration of two years from the date

upon which it was claimed that such alleged injuries were sustained."

We agree with respondents' assertion that the Southern District of New York would look to the two-year statute of limitations of Delaware in determining laches.

It was not until the two-year period specified in 10 Del.C. § 8118 had passed that in early March, 1963, libelant authorized his attorney, Wise, to institute action on his behalf. Wise thereupon checked to learn whether in January, 1961, when the alleged injury occurred, the S. S. Corona had a local agent in Wilmington but could find none. Wise also learned upon interrogation that the S. S. Corona was not expected in Wilmington at any time in the near future. Respondents make no contention that at some time within the two-year period after the accident the S. S. Corona or respondents had an agent in Delaware upon whom service could be made. From this it is fair to conclude that there was no such agent in Delaware. This circumstance is the basis for libelant's assertion that the Delaware toll statute prevents the Delaware two-year statute of limitations from being considered a bar to his action.

The Delaware tolling statute (10 Del. C. § 8116) reads:

> "If at the time when a cause of action accrues against any person, he is out of the State, the action may be commenced, within the time limited therefor in this chapter, after such person comes into the State in such manner that by reasonable diligence, he may be served with process. If, after a cause of action shall have accrued against any person, he departs from and resides or remains out of the State, the time of his absence until he

---

[1]. Since September 1, 1963, all actions to recover damages for personal injuries are subject to a three-year statute of limitations, N.Y. CPLR § 214(5), except those actions for intentional torts which are governed by a one-year statute. Id. § 215 (3). Actions such as libelant's, however, which arouse before September 1, 1963, and were not barred on that date, are governed by the six-year statute of limitations. Id. § 218(b); Bonilla v. Reeves, 49 Misc.2d 273, 267 N.Y.S.2d 374 (Supreme Ct. N.Y. County 1966).

shall have returned into the State in the manner provided in this section, shall not be taken as any part of the time limited for the commencement of the action."

■ Admiralty courts sitting in New York apply the tolling provisions of foreign statutes of limitations borrowed to determine laches. Le Gate v. The Panamolga, 221 F.2d 689, 690 (2d Cir. 1955); Phillips v. The Hellenic, 179 F.Supp. 5, 8 (S.D.N.Y.1959); Baez-Geigel v. American Foreign S. S. Corp., 171 F.Supp. 359, 361 (S.D.N.Y.1959). Without independently examining the question, this Court will follow these New York federal decisions, especially since they conform to the practice of New York state courts of generally borrowing tolling provisions as part of foreign statutes of limitation. Hanna v. Stedman, 230 N.Y. 326, 130 N.E. 566, 570 (1921); Cellura v. Cellura, 24 A.D.2d 59, 263 N.Y.S.2d 843 (1965); Isenberg v. Ranier, 145 App.Div. 256, 130 N.Y.S. 27 (1911); Anglo California Nat. Bank of San Francisco v. Klein, 162 Misc. 898, 296 N.Y.S. 191, 201 (Supreme Ct. N.Y. County 1936).

When the cause of action accrued the S. S. Corona was moored to the pier at the Wilmington Marine Terminal in the territorial limits of Delaware. New Jersey v. Delaware, 291 U.S. 361, 54 S.Ct. 407, 78 L.Ed. 847 (1934) (opinion of Court), 295 U.S. 694, 700, 55 S.Ct. 907, 79 L.Ed. 1659 (1935) (decree and attached map). An *in personam* action could then have been brought against respondents by attaching the S. S. Corona.[2]

Consequently when the cause of action accrued the respondents were not "out of the State" for the purpose of bringing the tolling statute into play, for they were then subject to "personal or other service to compel [their] appearance". Hurwitch v. Adams, 2 Storey 247, 52 Del. 247, 155 A.2d 591, 593 (1959).

■ It may be, however, that the S. S. Corona was not at the Wilmington Marine Terminal sufficiently long after the accident to have enabled libelant to attach her. As to this the record is silent. But the fact is that the M/S Lars Meling, another vessel which respondents owned, arrived at the port of Wilmington on December 22, 1961, and departed December 23, 1961. There is nothing in the record to suggest that she did not come into the state openly and notoriously and remain long enough so that with reasonable diligence libelant could have procured attachment process and have had the same served upon her in accordance with Admiralty Rule 2. See note 2 supra. Accordingly, we hold that the Delaware two-year statute of limitations began to run on December 22, 1961, and never stopped thereafter. Morrow v. Turner, 2 Marvel 332, 43 A. 166, 167–168 (1897). The two-year statute of limitations, therefore, expired on December 22, 1963, substantially before the action was begun.

There is nothing inequitable in holding that due diligence demanded that libelant institute action before December 22, 1963. Between December 22, 1961, the date when the analogous statute of limitations began to run, and December

2. During the period in question Admiralty Rule 2 provided in part:
"In suits in personam the mesne process shall be a simple monition in the nature of a summons to appear and answer to the suit, or by a simple warrant of arrest of the person of the respondent in the nature of a capias, as the libellant may, in his libel or information pray for or elect; in either case with a clause therein to attach his goods and chattels, or credits and affects in the hands of the gar-

nishees named in the libel to the amount sued for, if said respondent shall not be found within the district."
The Admiralty Rules were rescinded effective July 1, 1966. They are superseded by the Federal Rules of Civil Procedure and Supplemental Rules for Certain Admiralty and Maritime Claims. Supplemental Rule B continues the right of a libelant to institute an *in personam* action by attachment if a respondent is not found within the district where the suit is brought.

22, 1963, the S. S. Corona and other vessels owned by respondents were in United States ports (many of them on the East Coast) on 95 occasions for one day or longer for a total of 332 days. The Corona did not touch at East Coast ports, but other of respondents' ships did. Respondents' ships were in New York for 125 days; in Philadelphia 18 days; in Baltimore 11 days; in Newport News 7 days; in Newark, New Jersey, 4 days; in Norfolk 4 days; in Wilmington 4 days; and in Boston 2 days. Counsel retained by libelant within the analogous period of limitations could, with reasonable diligence, have commenced suit pursuant to Admiralty Rule 2 by attaching one of respondents' vessels touching at any port in the United States.

█ Libelant's failure to begin suit within the statutory period was of his own making. He employed no attorney until March, 1963, when he consulted Wise in Wilmington. It was not until February, 1964, that Wise referred the matter to Schwartz and O'Connell whom Wise requested to bring suit on libelant's behalf in New York. Clearly, libelant or those acting in his behalf were guilty of inexcusable delay in beginning his action.

█ As stated, inexcusable delay in instituting an action in admiralty, without more, is not sufficient to bar it. Significant prejudice resulting from the passage of time must also be shown. A presumption of prejudice, however, arises from unreasonable delay and a libelant is required to make an affirmative showing to the contrary to avoid a finding of laches. Claussen v. Mene Grande Oil Co., supra, 275 F.2d at 111; Oroz v. American President Lines, Ltd., supra, 259 F.2d at 639; Kane v. Union of Soviet Socialist Republics, supra, 189 F.2d at 304; Marshall v. International Mercantile Marine Co., supra, 39 F.2d at 552.

█ The presumption of prejudice which libelant is required to rebut in the instant case is rebutted by the record. It is true that deaths of witnesses whose testimony may have been important to the defense have occurred after the period fixed by the statute of limitations had run. Pederson, master of the S. S. Corona, died on March 17, 1966. Dr. Jones, who operated on libelant for his alleged injuries, died on October 8, 1967. Dutton, the foreman or supervisor on the job on which libelant alleges he was injured, died in the summer of 1966. Although the action was begun on April 21, 1964, it was not until about September, 1965, when respondent informally was notified of the pendency of the action. By October 19, 1965, when the order to transfer was entered, a New York firm had entered its appearance in New York for the respondents. With knowledge that respondents were faced with a claim which was then more than four-and-one-half years old, it behooved respondents to investigate with dispatch all facts surrounding the claim. With diligence the attorneys for respondents could have taken the depositions of the three persons whose testimony respondents claim was lost by reason of libelant's delay.

The first indication that respondents had that libelant was making any kind of a claim against them occurred in September, 1965. Before this, respondents argue, they had no occasion to investigate the circumstances which gave rise to the claim. Since, however, no ship's personnel witnessed the alleged accident, an earlier inquiry of them would have developed no eye-witness testimony as to its occurrence. The ship's personnel may have had relevant knowledge of conditions of the vessel pertaining to the asserted injury, but it cannot be assumed that such evidence is not still available.

Respondents offer no proof that the memories of persons having knowledge of relevant facts have been dimmed with the passing of time; indeed, respondents point to no one who is informed about the accident.

Nor does the record contain any suggestion that records of a significant kind have been lost or destroyed during the period of libelant's delay. The log of the S. S. Corona is still in existence but contains no entries or information concerning the accident.

The record in its totality indicates that if libelant had sued within the statutory period respondents could have discovered nothing which was not at their disposal after September, 1966, when they were informally notified that the action had been begun. Any presumption of significant prejudice from libelant's delay is therefore affirmatively rebutted by the record.

 The record upon which the defense of laches is based presents no genuine issue of any material facts. The question of laches is addressed primarily to the discretion of the Court in the light of the equities. Gardner v. Panama R. R. Co., 342 U.S. 29, 30, 72 S.Ct. 12, 96 L.Ed 31 (1951). In the exercise of that discretion, for the reasons previously stated, the Court will deny respondents' motion for summary judgment.

Let an order be submitted accordingly.