Richard E. MILLER, duly appointed Administrator of the Estate of Frank Wilder, Deceased

v.

COUSINS PROPERTIES, INCORPORATED, et al.

Civ. A. No. 73-6.

United States District Court,
D. Vermont.

March 22, 1974.

Lisman & Lisman, Burlington, Vt., for plaintiff.

Ryan, Smith & Carbine, Rutland, Vt., for defendant, North American Rockwell.

Paul, Frank & Collins, Burlington, Vt., for Cary S. Brown and L. McEachern, d/b/a Atlanta Air Maintenance.

## MEMORANDUM AND ORDER

HOLDEN, Chief Judge.

This action was instituted by Richard E. Miller of Jacksonville, Florida, the administrator of the estate of Frank Wilder, deceased, to recover in his representative capacity for the wrongful death of the decedent. The complaint against Cousins Properties, Incorporated, a Georgia corporation, alleges that the decedent was a passenger for hire on a jet aircraft, designated as an Aero Commander. According to the complaint, the airplane was owned and operated by Cousins, under the exclusive control and management of this defendant's agents and employees on January 27, 1971, when the aircraft crashed over or upon the waters of Lake Champlain, shortly after takeoff from the Burlington airport. It is alleged that the plane was sold to Cousins by the defendant North American Rockwell Corporation, an Arkansas corporation. Maintenance of the aircraft was performed by the defendants, Cary S. Brown and Larry McEachern, who operated the business, Atlanta Air Maintenance in Atlanta, Georgia, as partners. The complaint is stated in eight counts; the first four are based on diversity jurisdiction and the remaining counts invoke federal admiralty jurisdiction under 28 U.S.C. § 1333 and Rule 9, Fed.R.Civ.P.

North American was served in Little Rock as an Arkansas corporation. The plaintiff has now moved to amend the complaint to allege that "Defendant North American Rockwell Corporation is a multi-state corporation incorporated in Arkansas and Delaware . . . ." Recovery against the several defendants is sought under various theories of negligence, strict liability in tort and breach of warranty.

By way of separate motions to dismiss and for summary judgment, all of the

defendants challenge the court's in personam and subject matter jurisdiction of the action. The defendants, Cousins, Brown and McEachern also seek dismissal of the action for improper venue.[1]

Affidavits relating to the motions to dismiss and for summary judgment supply additional facts. Cousins was formerly a Delaware corporation, but is now a corporate citizen of Georgia and maintains its principal office in Atlanta. Its primary business is real estate development and investment. On February 27, 1968, CPI Burlington, Inc., a Georgia corporate subsidiary, entered a joint venture agreement with FM Burlington Company, a Delaware corporation, with the purpose of acquiring, owning and developing thirteen acres of land in which they held title in Burlington, Vermont. An Atlanta architectural firm of Tombs, Amisano & Wells was retained to design and develop plans for two office buildings on the Vermont real estate.

The architects for the Burlington venture engaged the consultant services of the decedent's engineering firm, Frank Wilder Associates of Atlanta, Georgia and Jacksonville, Florida. The developers of the Burlington project discovered and reported deficiencies in the air conditioning and heating systems to their architects. The architects requested the Wilder engineering firm to inspect these systems.

In pursuit of this undertaking, Frank Wilder and an associate engineer boarded the jet aircraft, owned by the defendant Cousins, at Fulton County Airport in Georgia on January 27, 1971. The pilot, co-pilot and four other passengers were employees of CPI. The destination of the flight was Harrisburg, Pennsylvania, Newark, New Jersey, Providence, Rhode Island and Burlington, Vermont; at each stop one of Cousins's passenger-employees deboarded. The decedent, his associate Windsor and a Cousins' employee, named Williams, continued on to Burlington.

After the inspection was performed, the decedent, Williams and Windsor, along with the pilot Nikita and co-pilot Myers, boarded the aircraft on the same evening, January 27, 1971, for the return flight to Providence, Harrisburg and Atlanta. The airplane took off at Burlington at 7:50 P.M. and disappeared from the tower's radar scope a few minutes later. The aircraft, passengers and crew have not been found. Search of the waters and eastern shoreline of Lake Champlain in May, 1971, located miscellaneous debris, including an antenna, a panel from the cabin structure and documents, relating to mechanical parts and inspection numbers, which have been identified as part of the contents and assembly of the Aero Commander, CP 400, owned and flown by Cousins and its personnel.

The defendant North American Rockwell Corporation, of Arkansas, is a holding company. One of its subsidiaries, North American Rockwell Corporation, the Delaware company, is now known as Rockwell International Corporation, and was the original vendor of the plane. The first owner of the plane, Southern Ohio Aviation Company, purchased the plane on December 10, 1965. The aircraft was later purchased by Cousins Properties, Inc., after it had been used by at least one prior owner.

The defendants Cary S. Brown and Larry McEachern, d/b/a Atlanta Air Maintenance, are engaged in the business of repairing and maintaining general and business aviation aircraft. Their company performed services of this nature on the plane involved in the crash. The only contact Atlanta Air Maintenance had with Cousins was through the plane's pilots. In order to schedule repair and maintenance service the maintenance firm would know usually when the plane would be away on a

---

1. The defendants' motions and supporting affidavits are not addressed to the issue of liability. Jurisdiction and venue are the only questions presented. These points are considered in the context of the motions to dismiss.

trip. However, these defendants did not know the plane's destination nor did they know of the flight to Burlington, Vermont, on January 27, 1971.

## PLAINTIFF'S MOTION TO AMEND

The problem presented by the plaintiff's motion to amend its complaint is whether it meets the criteria set forth in Fed.R.Civ.P. 15(c). It should be noted at the outset that the applicable statute of limitations, 14 V.S.A. § 1492(a), is two years. After the plaintiff caused service to be made on North American Rockwell Corporation, the Arkansas corporation, subsequent discovery revealed the Arkansas corporation is merely a holding company. Its subsidiary, North American Rockwell as a "corporation ware corporation, was the actual vendor of the plane which was manufactured by this corporation, or another subsidiary. The original complaint identifies North American Rockwell as a "Corporation with its principal place of business in Little Rock, Arkansas." The amended complaint alleges that the North American Rockwell Corporation is a multi-state corporation incorporated in Arkansas and Delaware, with principal places of business in Pittsburgh, Pennsylvania and El Segundo, California. Of course the plaintiff seeks to substitute, as a party defendent, the subsidiary corporation(s) that manufactured and sold the plane in place of the corporation it actually served, North American Rockwell, the Arkansas holding corporation.

■ Rule 15(c) allows amendments to pleadings to relate back to the date of the original pleading if certain criteria are satisfied. The party sought to be brought in must have received sufficient notice of the institution of the action so that it will not be prejudiced in its defense. The defendant sought to be substituted must have known that except for the mistake in identity of the proper party, the action would have been brought against it in the first place. If these two conditions are met and the claim arose out of the same conduct or occurrence, the amendment "changing" the party will relate back. Wright & Miller, Federal Practice and Procedure: Civil § 1498.

■ Since the plaintiff does not seek to alter the nature of his claim, the question is whether service on the parent holding corporation was sufficient to give notice to the subsidiary who manufactured and sold the aircraft and whether the Delaware corporation(s) should have known that the complaint was directed against it, rather than the parent. According to Professor Wright, the amendment should be allowed.

"When the named defendant and the party plaintiff actually intended to sue have an 'identity of interest,' an amendment adding the proper party will relate back if the other requirements of Rule 15(c) have been satisfied. Identity of interest generally means that the parties are so closely related in their business operations or other activities that the institution of an action against one serves to provide notice of the litigation to the other.—

"The relationship needed to satisfy the identity of interest test exists between a parent and a wholly owned subsidiary or between related corporations whose officers, directors, or shareholders are substantially identical and who may have similar names or conduct their business from the same offices. Identity of interest also has been found between past and present forms of the same enterprise." Wright, *supra* at § 1499.

See Travelers Indemnity Company v. United States, 382 F.2d 103 (10th Cir. 1967); Gifford v. Wichita Falls & Southern Railway Co., 224 F.2d 374 (5th Cir. 1955); Marino v. Gotham Chalkboard Mfg. Corp., 259 F.Supp. 953 (D.C.N.Y.1966).

In the instant case the manufacturer-vendor corporate subsidiary cannot claim any prejudice on the theory that it did not know that the complaint was di-

rected toward its operation.[2] The complaint against North American Rockwell is based on negligence, breach of warranty and strict liability in tort. Reasonable construction of these allegations could only be construed as running to the corporate subsidiary who manufactured and sold the aircraft, rather than to an inactive holding company. Absent any showing that the failure to serve the manufacturer would prejudice that subsidiary, notice to the parent corporation was sufficient. Plaintiff's motion to amend Count III, paragraph 1, will be granted.

## SUBJECT MATTER JURISDICTION

█ There is no question raised concerning diversity jurisdiction, including the amount in controversy. However, the plaintiff relies on federal admiralty jurisdiction. The problem, in facts similar to the instant case was recently put at rest by the Supreme Court in Executive Jet Aviation v. City of Cleveland, 409 U.S. 249, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972). The plaintiff invoked admiralty jurisdiction in an action for damages resulting from the crash of its plane in the navigable waters of Lake Erie shortly after take-off from a Cleveland airport. That the plane crashed on navigable waters and the negligence occurred while the plane was in flight over the lake were held insufficient to confer admiralty jurisdiction. The Court held that absent a statutory provision to the contrary, admiralty jurisdiction resides only where there is a significant relationship to traditional maritime activity. The opinion by Justice Stewart points out that " . . . there is no federal admiralty jurisdiction over aviation tort claims arising from flights by land-based aircraft between points within the continental United States." Id. at 274, 93 S.Ct. at 507. The rule announced in

*Executive* clearly applies to Counts 5 through 8 of the plaintiff's complaint.

## VENUE

█ The facts demonstrated in the record make it appear that the crash of the aircraft and the alleged negligent acts assigned to Cousins occurred in Vermont. This is adequate to establish that the claim, upon which the action is founded, arose in this District within 28 U.S.C. § 1391(b). Wright, Federal Courts § 42 (2d Ed.).

### *In Personam Jurisdiction*

### *Cousins Properties Incorporated*

█ Process was served on this defendant pursuant to Fed.R.Civ.P. 4(e) in reliance on 12 V.S.A. § 855.

If the contact with the state or the activity in the state of a foreign corporation, or the contact or activity imputable to it, is sufficient to support a Vermont personal judgment against it the contact or activity shall be deemed to be doing business in Vermont by that foreign corporation and shall be equivalent to the appointment by it of the secretary of the state of Vermont and his successors to be its true and lawful attorney upon whom may be served all lawful process in any action or proceedings against it arising or growing out of that contact or activity, and also shall be deemed to be its agreement that any process against it which is so served upon the secretary of state shall be of the same legal force and effect as if served on the foreign corporation at its principal place of business in the state or country where it is incorporated according to the law of that state or country.

Apart from the business activities and interests of this defendant's various subsidiary and related corporations in Vermont, Cousins is alleged to have commit-

---

2. The instant case is distinguishable from Weiner v. Sherburne Corp., 348 F.Supp. 797 (D.C.Vt.1972), where amendment was denied. There an additional defendant, a wholesaler of ski bindings, was found not to have a sufficient identity of interest with the corporation that rented the bindings to the plaintiff. Unlike the instant case, there was no intercorporate relationship of any type, either in the nature of parent-subsidiary, brother and sister or even any identical officers or directors.

ted a tort in this jurisdiction. The injuring agency, the lost aircraft, was intentionally flown into Vermont and departed from the Burlington airport under the defendant's management and control. In this context of the record, this Cousins' contact and activity in this state is sufficient to support a Vermont personal judgment against it by force of this statute and its forerunner (V.S. '47 § 1562). Cousins is deemed to be a foreign corporation doing business in Vermont. Smyth v. Twin State Improvement Corp., 116 Vt. 569, 575, 80 A.2d 664 (1951).[3]

Since Cousins must be held to know that the flight of its jet aircraft to and from Vermont could have potential consequences here it meets the requirements of Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958) and McGee v. International Life Insurance Co., 355 U.S. 220, 78 S.Ct. 199 (1957); Deveny v. Rheem Manufacturing Company, 319 F.2d 124, 127, 128 (1963). See also O'Brien v. Comstock Foods, Inc., 123 Vt. 461, 463 (1963).

■ The Court concludes that the defendant Cousins is within the reach of the long arm provisions of 12 V.S.A. § 855. There remains the second question of whether the process has been served correctly within the requirements of 12 V.S.A. § 856. Since the plaintiff has asserted that service was made according to sections 855 and 856, he has the burden of establishing that the process was validly served according to the requirements of these provisions of the Vermont statute. C. Wright and A. Miller, Federal Practice & Procedure, *supra* Civil § 1353.

12 V.S.A. § 856 provides:

Service of process by virtue of section 855 of this title shall be made by delivering to the secretary of state duplicate copies of the process, with the officer's return of service thereon, and a fee of $5.00, to be taxed in the plaintiff's costs if he prevails. The secretary shall forthwith forward one

of the duplicate copies by registered mail prepaid to the corporation at its principal place of business in the state or country where it is incorporated, which principal place of business shall be stated in the process. The service shall be sufficient if a copy of the process, with the officer's return thereon showing the service upon the secretary of state, is sent by the plaintiff to the foreign corporation by registered mail, and if the plaintiff's affidavit of compliance herewith is filed with the process in court. The secretary shall file one of the copies and endorse upon each copy the day and hour of service.

The marshal's return of service on the defendant Cousins indicates merely that the process was served on the "Richard C. Thomas, Secretary of State, State of Vermont." There is no affidavit of compliance to show that a duplicate copy was sent by registered mail to the defendant at its principal place of business, either by the secretary of state or by the plaintiff within the provisions of section 856.

■ Since the limitation of time for bringing this action under the Vermont wrongful death statute may have run, the court, in its discretion, will not dismiss the action. In the alternative, the action will be retained and the service of process on this defendant will be quashed to enable the plaintiff to correct the service. Wright & Miller, *supra* § 1354. See Stanga v. McCormick Shipping Corporation, 268 F.2d 544, 554 (5th Cir. 1959).

### North American Rockwell

This defendant, according to the complaint, is a multi-state corporation engaged in the mass production and sale of aircraft. According to the affidavit, its officer, North American (Arkansas) and its subsidiary (Delaware), in combination, are currently legally authorized to do business in all of the United States.

---

3. See *Footnote 2, McGee v. International Life Insurance Co.,* 355 U.S. 220 at 223, 79 S.Ct. 199, 2 L.Ed.2d 223, which refers to Smyth v. Twin State Improvement Co.

Service was made on this defendant outside Vermont in Little Rock, Arkansas, under the authority of 12 V.S.A. § 913(b) and Rule 4(e), Vermont Rules of Civil Procedure. These provisions of the law of Vermont authorize service outside the state on a defendant " . . . if it appears that the contact with the state by the party or the activity in the state . . . or the contact or activity imputable to him is sufficient to support a personal judgment against him." In that event " . . . the same proceedings may be had for personal judgment against him as if the process or pleading had been served in the state." Id.

■ The presence of the jet aircraft, manufactured and originally sold by this defendant in the state of Vermont, was sufficient to permit service outside the state within the concept of O'Brien v. Comstock Foods, Inc., *supra*, 123 Vt. at 465 and Deveny v. Rheem Mfg. Co., 319 F.2d at 127. Although the decisions in these cases dealt with a different long arm statute, their teaching is the same. See Restatement, Conflict of Laws 2d §§ 37 and 50; Phillips v. Anchor Hocking Glass Corporation, 100 Ariz. 251, 413 P.2d 732 (1966), 19 A.L.R.3d 1 and annotation; Gill v. Fairchild Hiller Corp., 312 F.Supp. 916 (D.C.N.H.1970); McMahon v. Boeing, 199 F.Supp. 908 (D. C.Ill.1961). See also Leasco Data Processing Equipment Corp. v. Maxwell, 468 F.2d 1326, 1341 (2d Cir. 1972). The motion of North American Rockwell to dismiss for want of personal jurisdiction cannot be sustained.

*Atlanta Air Maintenance*

■ The individual defendants, Brown and McEachern, doing business as Atlanta Air Maintenance, have a different bearing in relation to minimal contacts. While they performed maintenance in Georgia on the Cousins' aircraft, their affidavits refute the notion that they knew, or had good reason to know, their maintenance operations would have causative effect in Vermont. Their only contact with Cousins was by way of the pilot and co-pilot of the aircraft. Neither of these employees of Cousins informed them that the plane's flight plan would take them to Burlington, Vermont on January 27, 1971. To allow the action to be maintained in Vermont would offend "traditional notions of fair play and substantial justice" within the doctrine of International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). Since there is insufficient contact and activity with this jurisdiction, their motion to dismiss must be granted.