Avie LASSEIGNE, Plaintiff,

v.

NIGERIAN GULF OIL COMPANY, a Delaware Corporation, Defendant and Third-Party Plaintiff,

v.

McDERMOTT TRADE CORPORATION, a Delaware Corporation and the Travelers Insurance Company, a Connecticut corporation, Third-Party Defendants.

Civ. A. No. 4432.

United States District Court,
D. Delaware.

June 30, 1975.

Peter Warren Green, Newark, Del., Bob F. Wright, Domengeaux & Wright, Lafayette, La., for plaintiff.

Samuel R. Russell, Wilson & Russell, Wilmington, Del., for defendant and third-party plaintiff.

## OPINION AND ORDER

MURRAY M. SCHWARTZ, District Judge.

Issues presented by defendant Nigerian Gulf Oil Company's motion for summary judgment in this tort action under general maritime law brought on the "law side" of the District Court[1] are: 1) Whether a rigger-employee of an independent contractor who owned a derrick barge operating in navigable waters can maintain a maritime tort action against the party with whom his employer contracted, 2) whether the doctrine of collateral estoppel bars plaintiff in this action because of an adverse jury verdict in the Western District of Louisiana and 3) whether the action is time barred by reason of laches. A brief factual description and a somewhat more extended procedural discussion is essential to an understanding of the issues.

Plaintiff, Avie Lasseigne ("Lasseigne"), a citizen of Louisiana, was employed by McDermott International, Inc. ("McDermott") as a rigger on a derrick barge owned and operated by McDermott in navigable waters off the Gulf of Nigeria, pursuant to a contract between McDermott[2] and Nigerian Gulf Oil Company ("Nigerian Gulf"), a Delaware corporation and wholly owned subsidiary of Gulf Oil Corporation. On March 25, 1968 plaintiff fell from a boom on the derrick crane of the barge while attempting to comply with orders given to him in the course of his employment.

It is undisputed plaintiff was ordered to help prepare the barge for operation

---

1. Plaintiff originally filed suit requesting a jury trial seeking relief under the Jones Act, general maritime law, the doctrine of unseaworthiness, and for maintenance and cure. Upon an earlier motion by defendant, partial summary judgment was granted on the issue of unseaworthiness. Subsequently, plaintiff abandoned theories of recovery predicated upon the Jones Act and maintenance and cure. Docket Nos. 25, 29.

2. The contract itself identifies the parties as Nigerian Gulf Oil Company and McDermott *Overseas*, Inc., a Panama corporation. Docket No. 7. Plaintiff alleged in his complaint that Nigerian Gulf had "employed and/or otherwise contracted with McDermott International, Inc." Docket No. 1, ¶ 5, which was admitted by defendant in its answer. Docket No. 3, ¶ 5.

by climbing on to the boom of its derrick crane for the purpose of inspecting the cross members of. the boom and greasing the sheaves. Nor is it disputed Lasseigne sustained his injuries while attempting to walk on the angle irons of the boom, from which he lost his balance and slipped when the barge was struck by a large wave. In dispute are the precise circumstances under which Mr. Lasseigne was ordered to do the work which resulted in his fall.

At the time of the accident a Nigerian Gulf representative was present along with Russell Hill, an employee of McDermott and plaintiff's immediate supervisor. Plaintiff alleges that it was the Nigerian Gulf representative who gave the order that the boom be mounted and inspected and that such order was transferred to plaintiff "through Russell Hill." [3] Defendant denies any liability relying upon the independent contractor status of McDermott and the contract between McDermott and Nigerian Gulf.

Paragraph 19.1 of the contract between McDermott and Nigerian Gulf reads as follows:

19.1 Contractor [McDermott] is an independent contractor and nothing in this Contract shall be construed as creating the relationship of principal and agent, or employer and employee, between [Nigerian Gulf Oil] Company and Contractor or Contractor's agents, sub-contractors, or employees. Except where otherwise provided herein, and without limiting Company's right to inspect, reject and/or accept the work, Contractor shall have full control and management over the details of the work and the manner in which it is accomplished. Docket No. 7.

Plaintiff theorizes that the defendant, Nigerian Gulf, during the period while its personal representative was onboard the barge, owed a duty to plaintiff to properly supervise the operation in question, that defendant failed to do so, that defendant's representative in effect ordered plaintiff to perform work at a time and under conditions that were not safe, and that as a direct result of this negligence plaintiff suffered injury by way of his fall from the boom. Plaintiff's theory has matured into his sole surviving hope of recovery because of an adverse determination in the Western District of Louisiana.

Lasseigne first brought suit on March 11, 1970 in the District Court for the Western District of Louisiana against McDermott, The Travelers Insurance Company, and Gulf Oil Corporation. On October 5, 1971, plaintiff amended his complaint in that action to join Nigerian Gulf as a party defendant. This change arose from plaintiff's belated recognition that Nigerian Gulf, the only company with whom McDermott had contracted for the job, was a separate legal entity from Gulf Oil Corporation and as such should have been a named defendant from the outset.[4] On February 10, 1972 the court granted Nigerian Gulf's motion to dismiss the complaint as to it, subject to plaintiff's right to file a motion within five days to transfer the suit to Delaware under 28 U.S.C. § 1406.[5]

---

3. Plaintiff's Affidavit, Docket No. 13.

4. Docket No. 25 at p. 4.

5. Docket No. 10. The precise language as appears in the pleading file of the Louisiana District Court is as follows:

"This case came on for hearing on motion by Nigerian Gulf Oil Corporation to dismiss Plaintiff's complaint as to it on sundry grounds.

"The motion to dismiss is granted, subject to the right of Plaintiff to file a motion to transfer under 28 U.S.C.A. 1406 to the appropriate division and district in Delaware, in five days. If the motion to transfer is not forthcoming within five (5) days counsel for Nigerian Gulf . Oil Corporation shall present a formal judgment granting the motion to dismiss, in accordance with Rule 9(e) of the Rules of the United States District Court for the

The records of the Louisiana action as reflected in papers filed by defendant in the Delaware District indicate nothing further occurred until June 28, 1972 at which time a motion for final judgment of Nigerian Gulf was denied.[6] On July 7, 1972, the Louisiana District Court granted plaintiff thirty days within which to institute proceedings against Nigerian Gulf in Delaware.[7] Plaintiff filed suit in this Court on July 28, 1972 against Nigerian Gulf.

At the trial in the Louisiana action against the remaining defendants, the following questions were propounded to the jury:

Interrogatory No. 1: Do you find from a preponderance of the evidence that the agents, representatives, or employees of McDermott International, Inc., were guilty of any negligence which played any part, even the slightest, in bringing about or causing the accident on March 25, 1968?

Interrogatory 2: Do you find from a preponderance of the evidence that the Barge DB-4 was unseaworthy which was a proximate cause of the accident in question?

The Louisiana jury answered both questions in the negative, and judgment was entered in favor of the defendant McDermott on February 6, 1973.

### I. Failure to State a Claim

■ The defendant first urges in support of its summary judgment motion that the plaintiff has failed to state a claim upon which relief may be granted. Defendant's position is not meritorious. The complaint alleges defendant owed a duty of supervisory care to the plaintiff, that duty was breached, and the breach of duty proximately caused the injury to plaintiff. If plaintiff is able to prove his allegations, he is entitled to recover damages.

The law recognizes that under certain conditions the party who has contracted with an independent contractor may be liable for injuries sustained by the independent contractor's employee.

"We agree that it is not sufficient to impose a duty on the contractee that it retains or assumes 'some control over or supervision of the premises or generally of the operations.' In cases governed by Texas law, this Court has held that in the absence of any actual control of the operation, or of any reserved right of control more than deemed necessary to secure the satisfactory completion of the work, an employee of an independent contractor owes no duty to the contractor's employees to inspect or supervise the installation or operation of machinery furnished by the contractor. . . . At the other extreme, where the employer of the independent contractor assumes control or direction of the method of performing the work, the relation of employer and independent contractor is changed to that of master and servant. . . . Between these two extremes, under the facts of the present case, the only liability of Southern to employees of Index would appear to be for the exercise of its control of the derrick floor at the time of the accident."

*Southern Natural Gas Company v. Wilson*, 304 F.2d 253, 262–63 (5th Cir. 1962).

■ Recovery by the plaintiff is not limited to plaintiff's employer when special conditions are met. The duty owed in such cases is separate and independent of any duty owed the employee by his independent contractor employer. *Dugas v. Pelican Construction Company, Inc.*, 481 F.2d 773 (5th Cir.), *cert. den.* 414 U.S. 1093, 94 S.Ct. 723, 38 L.Ed.2d

---

Western District of Louisiana. Judgment will not be entered until the formal judgment is signed and filed."

6. The record in this court is silent as to what occurred between the grant of Nigerian

Gulf's motion to dismiss and denial of its motion for summary judgment.

7. This last fact was alleged by plaintiff and admitted by defendant. Docket No. 1, ¶ 11, and Docket No. 3, ¶ 11.

550 (1973); *accord, Movible Offshore v. Ousley,* 346 F.2d 870 (5th Cir. 1965).

Plaintiff in the instant action is walking an extremely narrow line. With unseaworthiness determined adversely to plaintiff by the Louisiana jury and the relationship of employer-employee for Jones Act purposes eliminated by concession, the only liability of Nigerian Gulf to plaintiff, an employee of McDermott, appears to rest on the slender thread of an alleged breach of duty of care owed by Nigerian Gulf to plaintiff. On the present record it cannot be said defendant has demonstrated the complete absence of such a duty.

■ Defendant further objects to plaintiff's characterization of this negligence action as being under general maritime law. The alleged injury occurred to a seaman while working onboard a vessel in navigable waters. The defendant had contracted with plaintiff's employer for performance of that work. The action having arisen from an alleged wrong located over navigable waters, and that alleged wrong bearing as it did a significant relationship to traditional maritime activity, the suit is properly characterized as being maritime in nature.[8] As such, plaintiff's cause of action would be cognizable in admiralty and, given satisfaction of the diversity requirements of 28 U.S.C. § 1332, was also properly brought "at law."[9]

■ It is concluded a claim has been fairly pleaded by the plaintiff so as to preclude a grant of summary judgment predicated upon the failure of plaintiff to assert a claim upon which relief can be granted.[10]

## II. Collateral Estoppel

Nigerian Gulf asserts that by virtue of the former adjudication in Louisiana, plaintiff is prevented from pursuing this action under the doctrine of collateral estoppel. In determining the applicability of the foregoing doctrine, a threshold choice of law problem is presented. Should the Court in this diversity action look to the Delaware substantive law of collateral estoppel or federal law? *Williams v. Ocean Transport Lines, Inc.,* 425 F.2d 1183 at 1190 (3d Cir. 1970) is read as leaving the question open where a maritime tort is presented by way of diversity jurisdiction. While the Third Circuit is an acknowledged leader in pushing back the frontiers of the collateral estoppel doctrine,[11] it cannot be said the Delaware Supreme Court has remained wedded to the more traditional notions of the doctrine.[12] Even applying the more definite, and perhaps more liberal standard of the Third Circuit, defendant cannot prevail. For that reason, the choice of law issue is left unanswered.

■ A comparison of the complaints in the two actions shows the same conjury of facts surrounding the same alleged injury. However, the theories of recovery differ. In the prior suit against McDermott, plaintiff al-

---

8. *See* Executive Jet Aviation v. City of Cleveland, 409 U.S. 249, 268, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972). *See generally,* 7A J. Moore, *Federal Practice,* Admiralty ¶ .325 (1972 ed. and 1974 Supp.).

9. *See, e. g.,* Advisory Committee Note to F. R.Civ.P. Rule 9(h); *see generally,* 2A J. Moore, *Federal Practice* ¶ 9.09, Gilmore and Black, The Law of Admiralty (2d Ed. 1975) § 6–58.

10. By affidavit, the defendant disputes that Nigerian Gulf was supervising the operation during which plaintiff was allegedly injured and disputes that defendant ordered plaintiff to perform work under unsafe conditions.

These differences as to material facts preclude any summary judgment determination.

11. Scooper Dooper, Inc. v. Kraftco Corp., 494 F.2d 840 (3d Cir. 1974); Lynne Carol Fashions, Inc. v. Cranston Print Works Co., 453 F.2d 1177, 1181 n. 70 (3d Cir. 1972); Provident Tradesmens Bank & Trust Co. v. Lumbermens Mutual Casualty Co., 411 F.2d 88 (3d Cir. 1969); and Bruszewski v. United States, 181 F.2d 419, 421 (3d Cir. 1950).

12. *Cf.* Thompson v. D'Angelo, 320 A.2d 729 (Del.Supr.1974); E.B.R. Corporation v. PSL Air Lease Corporation, 313 A.2d 893 (Del.Supr.1973).

leged, *inter alia,* McDermott's failure to keep the barge in a safe and seaworthy condition, McDermott's failure to provide plaintiff with a safe place in which to work, and with otherwise being careless, reckless and negligent in the premises. As to Nigerian Gulf, in the suit at bar plaintiff alleges failure to properly supervise the operation and negligence in ordering plaintiff to perform work under unsafe conditions.[13] Plaintiff contends that the liability of Nigerian Gulf stems from the issuance of its superintendent's instruction to proceed with activity which because of wind and sea conditions presented an unreasonable risk of harm to plaintiff who attempted to abide by those instructions. While the injury and consequently much of the proof is the same as that tried in Louisiana, a different theory of recovery is here alleged against a different defendant who allegedly owed to the plaintiff a quite different set of duties.

Plaintiff's theory of negligence does not encompass Nigerian Gulf's negligence as being derivative from McDermott's negligence. The Louisiana jury made a finding only with respect to the negligence of McDermott.[14] Based upon the present record this Court does not know whether the Louisiana jury might have concluded conditions under which plaintiff was ordered to work were safe. Equally consistent with the jury verdict is that the operative order should not have been given but that McDermott was not liable because it was not given under circumstances which would make it at fault.

While there are circumstances in which the collateral estoppel doctrine can be applied where there are different party defendants and different theories of recovery against each defendant, *Williams v. Ocean Transport Lines, Inc.,* 425 F.2d 1183 (3d Cir. 1970),[15] it can only be applied "broadly to anyone who had a full and fair opportunity to litigate the issue in question as a party in the first action." *Id.* at 1190. Absent derivative liability of Nigerian Gulf, it cannot be said plaintiff had any such opportunity.

". . . If a court of competent jurisdiction decides a matter distinctly put in issue, relitigation of the same question in a subsequent proceeding may be barred by the rule of collateral estoppel. The conclusive effect of a prior adjudication constitutes an estoppel only with respect to issues actually litigated and necessary to support the initial judgment. Litigation of any matter that was 'collaterally in question,' 'incidentally cognizable,' or 'to be inferred by argument from the judgment' is not restricted in a subsequent suit."

*Donegal Steel Foundry Co. v. Accurate Products Co.,* 516 F.2d 583 (3d Cir. 1975).

■ The Louisiana jury verdict adverse to plaintiff on unseaworthiness [16] is of no aid to defendant. While, at one time it could be persuasively argued that unseaworthiness included operating negligence,[17] which in turn encompassed the giving of an order on board a ship,[18] it is now settled "operating negligence"

---

13. Plaintiff concedes that only these two allegations remain in the suit. Docket No. 30 pp. 2–3.

14. *Supra* p. 469.

15. Because liability was never seriously contended in *Williams,* plaintiff had full opportunity to present the issue of damages in the first of his suits to be tried and was therefore precluded from trying the same issue in another jurisdiction against a different defendant on a different theory.

16. *Supra* p. 469.

17. Mascuilli v. United States, 387 U.S. 237, 87 S.Ct. 1705, 18 L.Ed.2d 743 (1967); Waldron v. Moore-McCormack Lines, Inc., 386 U.S. 724, 87 S.Ct. 1410, 18 L.Ed.2d 482 (1967); Crumady v. The J. H. Fisher, 358 U.S. 423, 79 S.Ct. 445, 3 L.Ed.2d 413 (1959); Mahnich v. Southern S. S. Co., 321 U.S. 96, 64 S.Ct. 455, 88 L.Ed. 561 (1944).

18. Waldron v. Moore-McCormack Lines, Inc., *supra.*

is not within the substantive law of seaworthiness.[19] "Liability based upon unseaworthiness is wholly distinct from liability based upon negligence."[20] The Third Circuit has held "[t]he breach of the duty to use reasonable care to provide a safe place to work, without more, does not necessarily result in liability for unseaworthiness" stating that

". . . the Supreme Court has not incorporated or included within the law of unseaworthiness those duties of care which a shipowner owes to persons working aboard the vessel, the breach of which, when the breach proximately causes injuries, would result in liability to the shipowner for negligence. The Court has not melded the duty to provide a seaworthy vessel with the duty to provide a safe place to work, but has repeatedly stated that the two concepts of seaworthiness and negligence should remain separate and distinct."

*Earles v. Union Barge Line Corporation,* 486 F.2d 1097, 1104–05 (3d Cir. 1973).

It is concluded the absence of negligence on the part of the contractor McDermott and its agents and employees, as determined in the prior action, is not dispositive of the issue of negligence on the part of Nigerian Gulf.

### III. Laches

Finally, defendant argues that the instant suit should be barred as untimely. In admiralty suits the measure of timeliness is, in the first instance, not the analogous local statute of limitations, but the equitable doctrine of laches. *See Czaplicki v. The Hoegh Silver-*

*cloud,* 351 U.S. 525, 533, 76 S.Ct. 946, 100 L.Ed. 1387 (1956).

However, defendant points out that this suit is brought on the "law side." Because this is not an admiralty case, he argues, the appropriate measure is the analogous State statute of limitations.[21] Some courts have agreed.[21A]

This Circuit has lined up with the majority, in declining to distinguish, in this instance, between admiralty cases and "at law" maritime cases. *Claussen v. Mene Grande Oil Company,* 275 F.2d 108, 110 & n. 1 (3d Cir. 1960); *Henderson v. Cargill, Inc.,* 128 F.Supp. 119 (E. D.Pa.1954); *Apika v. Pennsylvania Warehousing & Safe Deposit Co.,* 74 F. Supp. 819 (E.D.Pa.1947).[22] The majority rule was recently applied in this District in *Francis v. Pan American Trinidad Oil Company,* 392 F.Supp. 1252, p. 1256 (D.Del.1975).

The Court is not unmindful that, in recent Supreme Court opinions, certain elements of federal maritime jurisdiction have given way to state law. In *Rodrigue v. Aetna Casualty & Surety Co.,* 395 U.S. 352, 89 S.Ct. 1835, 23 L. Ed.2d 360 (1969), *Chevron Oil Co. v. Huson,* 404 U.S. 97, 92 S.Ct. 349, 30 L. Ed.2d 296 (1971), and *Executive Jet Aviation, Inc. v. City of Cleveland,* 409 U.S. 249, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972), maritime jurisdiction was construed as being more limited in scope than had been supposed. And in *Askew v. American Waterways Operators, Inc.,* 411 U.S. 325, 93 S.Ct. 1590, 36 L.Ed.2d 280 (1973), it was recognized that in the absence of fatal conflict between schemes, states may exercise their police

---

19. Usner v. Lockenbach Overseas Corp., 400 U.S. 494, 498, 91 S.Ct. 514, 27 L.Ed.2d 562 (1971).

20. *Id.* at 498, 91 S.Ct. at 517.

21. The statute most closely analogous to this maritime tort action is the two year personal injury statute, 10 Del.C. § 8118.

21A. The "majority rule" is that laches, not the State statute, should be applied. *See* 91 ALR2d 1427, Annotation: Maritime Injuries —Time Limitations, § 5 (1963). The Su-

preme Court has recognized the controversy, but refused comment. McAllister v. Magnolia Petroleum Co., 357 U.S. 221, 224 n. 5, 78 S.Ct. 1201, 2 L.Ed.2d 1272 (1958).

22. *Accord* Oroz v. American President Lines, Inc., 259 F.2d 636 (2d Cir. 1958). *But see* Naglis v. United States Lines Company, 250 F Supp. 955 (E.D.Pa.1965), in which the minority rule was applied, without discussion [as to this issue] of the two prior cases in that forum, and one in this Circuit, which applied the majority rule.

power respecting maritime activities concurrently with the federal government. There has been no indication, however, that the Court has taken a position on traditional application of admiralty notions of timeliness, to non-admiralty maritime cases.[23] Therefore, this Court will follow the approach adopted in this Circuit and this District on the issue, and apply the doctrine of laches.

■ For a defense of laches to be successfully invoked, the Court must find both an inexcusable delay in instituting suit and prejudice resulting to the defendant from such delay. *Gruca v. United States Steel Corp.*, 495 F.2d 1252, 1258 (3d Cir. 1974); *Burke v. Gateway Clipper*, 441 F.2d 946, 949 (3d Cir. 1971). *Accord, Churma v. United States Steel Corp.*, 514 F.2d 589 (3d Cir. 1975). Where there is inexcusable delay, but no finding of prejudice to the defendant, laches cannot be invoked. *Gruca v. United States Steel Corp.*, *supra* at 1260; *Claussen v. Mene Grande Oil Company*, *supra* at 113; *Wilkes v.*

*H. M. Wrangell & Co.*, 293 F.Supp. 522, 527 (D.Del.1968).

■ If the analogous state statute of limitations has not expired, defendant bears the burden of proving both elements of laches. Where, as here, that statute has expired, the plaintiff bears the burden on *both* inexcusable delay and prejudice (though he avoids laches by carrying the burden on either). *Gruca v. United States Steel Corp.*, *supra* at 1259; *Burke v. Gateway Clipper*, *supra* at 949.[24] The record alone may be sufficient to rebut the presumption of prejudice and, in effect, satisfy plaintiff's obligation with respect to laches. *Wilkes v. H. M. Wrangell & Co.*, *supra* at 527.[25]

The accident which is the basis of this suit took place on or about March 25, 1968. On March 11, 1970, plaintiff brought suit in the Western District of Louisiana against McDermott, The Travelers Insurance Company, and Gulf Oil Corporation.[26] Pursuant to that suit, on August 12, 1971 plaintiff's coun-

23. Indeed, in Kermarec v. Compagnie Generale Transatlantique, 358 U.S. 625, 628, 79 S.Ct. 406, 408, 3 L.Ed.2d 550 (1959), the Supreme Court stated:

"Kermarec was injured aboard a ship upon navigable waters. It was there that the conduct of which he complained occurred. The legal rights and liabilities arising from the conduct were therefore within the full reach of the admiralty jurisdiction and measurable by the standards of maritime law . . . [citations omitted] . . . If this action had been brought in a state court, reference to admiralty law would have been necessary to determine the rights and liabilities of the parties . . . [citations omitted] . . . Where the plaintiff exercises the right conferred by diversity of citizenship to choose a federal forum, the result is no different, even though he exercises the further right to a jury trial. Whatever doubt may once have existed on that score was effectively laid to rest by Pope & Talbot, Inc. v. Hawn, 346 U.S. 406, 410–411, 74 S.Ct. 202, 204, 98 L.Ed. 143." *See generally* the list of examples in 1 Benedict on Admiralty, Jurisdiction § 112 (1974 ed.).

24. The Third Circuit recognized in *Gateway Clipper*, at 950, that other Circuits recently

have decided, since facts concerning prejudice are peculiarly within defendant's knowledge, he should in any event bear the burden on this issue. *See, e. g.,* Larios v. Victory Carriers, Inc., 316 F.2d 63 (2d Cir. 1963); Gilmore & Black, *The Law of Admiralty*, § 9–81, p. 776. However, it was concluded: "We see no new and compelling reason to reverse the well-established and thoroughly considered line of decisions of this Circuit requiring the plaintiff to disprove both inexcusable delay and lack of prejudice to the defendant . . . .."

25. In the matter sub judice plaintiff apparently has proceeded under the unfortunate assumption that defendant bears the burden of pleading facts which would prove prejudice. Plaintiff's brief, Docket No. 28, p. 6. Although the record leaves much to be desired, the motion has been briefed and argued, and the law of burden of proof is clear. The Court will determine the presence or absence of material issues of fact on the basis of the present record.

26. That suit, based upon the Jones Act and an unseaworthiness claim, was well within the applicable 3 year statute of limitations of the Act.

**474**

sel received a letter from counsel for Gulf Oil, which began:

"After reviewing our file and consulting with our clients, we have found out the following information for you. Gulf Oil of Nigeria, Ltd. is a Nigerian corporation, and a wholly owned subsidiary of Gulf Oil Corporation.

"Nigerian Gulf Oil Corporation is a Delaware corporation and is a wholly owned subsidiary of Gulf Oil Corporation."

 On October 5, 1971, plaintiff amended the complaint to join Nigerian Gulf. The record is silent as to plaintiff's diligence in discovering that this suit could eventually be maintained only in Delaware. Neither does it explain the delay in amending the Western District of Louisiana complaint.[27]

The record shows that on February 10, 1972, a minute entry was filed in the Western District of Louisiana, granting defendant Nigerian Gulf Oil's motion to dismiss "on sundry grounds," subject to the right of plaintiff to file a motion to transfer to this District within five days, pursuant to 28 U.S.C. § 1406.[28] However, a minute entry of June 28, 1972 states: "This case came on for hearing on motion by Gulf Oil Corporation and Nigerian Gulf Oil Company for entry of final judgment. Motion granted insofar as Gulf Oil Corp. is concerned, and *denied insofar as Nigerian Gulf Oil Company is concerned.*" (emphasis added) Finally, on July 7, 1972, the District Court of the Western Dis-

trict of Louisiana granted plaintiff 30 days to proceed against Nigerian Gulf in Delaware. Counsel for the plaintiff states that this was done because the Western District of Louisiana was "unable to establish that Nigerian Gulf did any business in the State of Louisiana." Docket No. 25, p. 4. On July 28, 1972, the instant action was filed.

### A. Inexcusable Delay

 Plaintiff bears the burden of satisfactorily explaining his delay in filing the instant action in this Court. A silent record and absence of factual allegations[29] preclude drawing inferences favorable to plaintiff.

The following lapses are not sufficiently explained:

1. From the date of accident, March 25, 1968, to the filing of suit in the Western District of Louisiana, March 11, 1970. Plaintiff might have had a good reason for waiting almost two years, but makes no allegation to that effect.

2. From March 11, 1970 to August 12, 1971 when plaintiff learned from opposing counsel that he had sued the parent rather than the subsidiary. It could be inferred either that plaintiff should have discovered this earlier, or that defendant "lulled" plaintiff to sleep. In the absence of any allegation that defendant should have made earlier disclosure, or that he filed a misleading answer,[30] the Court can draw no inference favorable to plaintiff. The delay remains unexplained, and unexcused.

---

27. It is hornbook law that on defendant's motion for summary judgment, plaintiff is to be given the benefit of all available factual inferences. 6 J. Moore, *Federal Practice,* ¶ 56.15[3], p. 2337 (1974). Here, however, defendant is entitled to a *legal* presumption in his favor. Plaintiff may "not hold back until trial evidence, if any . . ., to controvert the legal deduction" operating in defendant's favor. *Id.* at 2343. *See, e. g.,* Engl v. Aetna Life Ins. Co., 139 F.2d 469 (2d Cir. 1943).

28. "If the motion to transfer is not forthcoming within five (5) days, counsel for Ni-

gerian Gulf Oil Corporation shall present a formal judgment granting the motion to dismiss, in accordance with Rule 9(e) of the Rules of the United States District Court for the Western District of Louisiana. Judgment will not be entered until the formal judgment is signed and filed." Docket No. 9.

29. *See* 6 J. Moore, *Federal Practice, Id.* at 2346.

30. *See, e. g.,* Williams v. Pennsylvania R. Co., 91 F.Supp. 652 (D.Del.1950). Most of the Western District of Louisiana record has not been made available to this Court.

3. From August 12, 1971 to October 5, 1971 when the complaint was amended to add Nigerian Gulf. Plaintiff has made no factual allegation explaining the delay.

4. From August 12, 1971 to action by the Western District of Louisiana on July 7, 1972. The confusing record makes possible a handful of excuses for plaintiff, but none is alleged. The Court cannot infer that, upon learning Nigerian Gulf was a Delaware corporation on August 12, 1971, plaintiff should and could not have filed in this Court with reasonable dispatch.

Plaintiff having failed to rebut the presumption of inexcusability which attaches to these delays, the Court cannot credit him with inferences normally available when considering a defendant's motion for summary judgment. He has failed to negate the presumption of inexcusable delay.

### B. Prejudice

Although guilty of inexcusable delay, plaintiff may avoid laches by overcoming the presumption of prejudice.[31] In the appropriate case, this presumption may be rebutted by the record alone.[32] In the instant action, plaintiff has not contended that Nigerian Gulf had actual knowledge of the action, and was therefore not prejudiced by delay in being sued in this Court. Rather, plaintiff contends that the record's disclosure of a parent-wholly-owned-subsidiary relationship between Gulf and Nigerian Gulf is sufficient to show constructive knowledge by Nigerian Gulf of plaintiff's action, within the analogous statutory period. It is contended this constructive knowledge is enough to require a showing of no actual knowledge by Nigerian Gulf.

It has been held (in an analogous context) that, as a matter of law, the "identity of interest" between a parent and wholly owned subsidiary corporation means that service on the parent is constructive notice to the subsidiary. *Miller v. Cousins Properties, Incorporated*, 378 F.Supp. 711, 714–15 (D.Vt. 1974).[33] Without determining the question posed in *Miller*, it is held for purposes of laches, that the parent-wholly-owned-subsidiary relationship creates an inference that service on Gulf was notice to Nigerian Gulf.

Moreover, it is clear that, having constructive knowledge of the action, Nigerian Gulf also knew that the suit would have been directed against it, rather than Gulf, but for plaintiff's mistake.[34]

As part of its preparation, defendant was obliged to consider the possibility of the case being transferred to this District. In *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 467, 82 S.Ct. 913, 916, 8 L.Ed.2d 39 (1962), the Court held that a suit might be transferred after expiration of the statute of limitations, even though the forum in which the suit was originally filed lacked personal jurisdiction over the defendant. The Court stated:

"When a lawsuit is filed, that filing shows a desire on the part of the plaintiff to begin his case and thereby

---

31. This presumption arises from filing of the suit after expiration of the analogous statutory period. See p. 473, *supra.*

32. Wilkes v. H. M. Wrangell & Co., 293 F. Supp. 522, 527 (D.Del.1968).

33. At issue was notice of an action for purposes of Rule 15(c), Fed.R.Civ.P. In Wright & Miller, *Federal Practice and Procedure: Civil* § 1499, it is stated: "The relationship needed to satisfy the identity of interest test exists between a parent and a wholly owned subsidiary. . . ." The cases cited by Wright & Miller in support of this blanket statement do not fully support it; in each instance something in addition to the bare subsidiary relationship is present. This is also true with respect to cases cited by the *Miller* Court.

34. This case is unlike Francis v. Pan American Trinidad Oil Company, *supra*, where, in the analogous context of Rule 15(c)(2), there had been no defective attempt to sue the party charged with constructive knowledge, within the statutory period, that the suit was directed at that defendant.

toll whatever statutes of limitations would otherwise apply. The filing itself shows the proper diligence on the part of the plaintiff which such statutes of limitations were intended to insure." [35]

Plaintiff has pointed to record facts which are susceptible of inference that, within the analogous statutory period, defendant (1) knew of the action, (2) knew the action would have been directed against itself, but for plaintiff's mistake, and (3) should have been prepared to litigate the case in a forum where proper jurisdiction could be had. By such inference, defendant was as well prepared to defend the case as if he had been served during the analogous statutory period. Thus, the presumption of prejudice is rebutted. Defendant having remained silent, the issue of prejudice remains one to be tried. *Cf. Claussen v. Mene Grande Oil Company, supra*, 275 F.2d at 113; *Naglis v. United States Lines Co.*, 250 F.Supp. 955, 956 (E.D. Pa.1965). Summary judgment on the basis of laches cannot be granted.

■ While rulings have been made on defendant's theories, it is noted under Fed.R.Civ.P. 8(c), the defenses of laches and estoppel are affirmative defenses which should have been raised in the pleadings. Failure to do so can result in a waiver of these defenses. *Trio Process Corp. v. L. Goldstein's Sons, Inc.*, 461 F.2d 66, 74 (3d Cir. 1972). While defendant has made no application to amend the pleadings or otherwise correct the omission,[36] neither has plaintiff objected to the introduction of these defenses by the motion for summary judgment. Instead, he has responded by argument as if they had been properly raised in the pleadings.

In light of the Court's disposition of this motion no prejudice has been caused the plaintiff. From this point forward

he is on notice that the issue of laches may be present at a subsequent trial. At this time the Court perceives no reason why defendant should not be permitted to amend his answer to conform to the requirements of Rule 8(c). Nonetheless, plaintiff has a right to be heard on the matter. Therefore the Court will entertain a motion promptly filed by defendant under Rule 15(a) to effect the necessary change.

---

35. *See* 28 U.S.C. § 1406. *Cf.* United States v. Berkowitz, 328 F.2d 358, 360–61 (3d Cir. 1964). That the case was not in fact transferred is irrelevant to defendant's obligation to prepare.

36. The answer was filed January 24, 1973. The verdict in the Louisiana action, giving rise to the collateral estoppel assertion, was returned February 6, 1973.