Bonnie Lee Jamieson DEVENY, b.n.f. Frank Jamieson, and Frank Jamieson, Plaintiffs-Appellees,

v.

RHEEM MANUFACTURING COMPANY, Robertshaw Fulton Controls Company, Defendants-Appellants.

No. 249, Docket 27681.

United States Court of Appeals Second Circuit.

Argued March 4, 1963.

Decided June 6, 1963.

---

1. 42 U.S.C.A. § 1983.

John M. Dinse, of Edmunds, Austin & Wick, Burlington, Vt., for defendant-appellant Rheem Mfg. Co.

A. Pearley Feen, Burlington, Vt. (Paul D. Sheehey, Burlington, Vt., on the brief), for defendant-appellant Robertshaw Fulton Controls Co.

Philip H. Hoff, of Black, Wilson & Hoff, Burlington, Vt., for Bonnie Lee Jamieson Deveny and Frank Jamieson, plaintiffs-appellees.

Before CLARK and WATERMAN, Circuit Judges, and DIMOCK, District Judge.

CLARK, Circuit Judge.

On August 17, 1958, plaintiff Bonnie Lee Jamieson Deveny went to the cellar of her aunt's home in Burlington, Vermont, to relight the pilot light of the hot water heater, which had gone out. The

heater, manufactured by defendant-appellant Rheem Manufacturing Company and containing a control device manufactured by defendant-appellant Robertshaw Fulton Controls Company, exploded, and plaintiff sustained serious burns.

This action was instituted by plaintiff Bonnie Lee and her father as next friend and on his own behalf in the United States District Court for the District of Vermont by service against the defendants, both foreign corporations, in accordance with Vermont's so-called "long-arm" or "single act" statute, 12 V.S.A. § 855. Service pursuant to a state statute is a permissible way of commencing an action in a federal district court. See Fed.R.Civ.P. 4(d) (7). The Vermont statute, passed in 1947, has the title "Doing business as appointment of process agent," and provides:

"If a foreign corporation makes a contract with a resident of Vermont to be performed in whole or in part by either party in Vermont, or if such foreign corporation commits a tort in whole or in part in Vermont against a resident of Vermont, such acts shall be deemed to be doing business in Vermont by such foreign corporation and shall be deemed equivalent to the appointment by such foreign corporation of the secretary of state of Vermont and his successors to be its true and lawful attorney upon whom may be served all lawful process in any actions or proceedings against such foreign corporation arising from or growing out of such contract or tort. The making of such contract or the committing of such tort shall be deemed to be the agreement of such foreign corporation that any process against it which is so served upon the secretary of state shall be of the same legal force and effect as if

served on the foreign corporation at its principal place of business in the state or country where it is incorporated and according to the law of that state or country." 12 V.S.A. § 855.

12 V.S.A. § 856 requires both the secretary of state and the plaintiff to give actual notice to the tort-feasor by sending copies of the process to its principal place of business by registered mail.

We are confronted at the outset with an attack upon the jurisdiction of the court below. Jurisdiction cannot be sustained unless the Vermont statute under which service was had comports with constitutional requirements of due process. This statute and others like it [1] represent the latest steps in the well-established trend away from the territorial concept of personal jurisdiction, which underlay much of nineteenth century Anglo-American jurisprudence. See, e. g., the celebrated opinion of Lord Ellenbrough in Buchanan v. Rucker, 9 East 192 (K.B.1808); and cf. the equally famous opinion of Mr. Justice Field in Pennoyer v. Neff, 95 U.S. 714, 24 L.Ed. 565. In the late nineteenth century, and continuing on into our own, increased use of the corporate form, together with the greater mobility afforded by modern means of transportation, brought about an expansion of corporate activity to a nationwide scale; corporations simply refused to remain penned up within their own states of incorporation. The existence of corporations which could—and did—do business on a nationwide scale necessitated revision of older, more limited, notions concerning jurisdiction. The need gave birth to a trend toward expansion of the constitutionally permissible scope of state jurisdiction over foreign corporations. This trend was reflected by such cases as International Shoe Co. v. State of Washington, 326 U.

1. See, e. g., 6 Conn.Gen.Stat. § 33–411; Idaho Code (Supp.) § 5–514; 2 Ill.Rev. Stat. c. 110, § 17; Wash.Rev.Code § 4.-28.185; Wis.Stat.Ann. (Supp.) § 262.05. See Connecticut Tool & Mfg. Co. v. Bowsteel Distributors, 24 Conn.Sup. 290, 190 A.2d 236, upholding provisions of the Connecticut statute providing for service on the secretary of state as agent of foreign corporations transacting business in the state without a certificate of authority.

S. 310, 66 S.Ct. 154, 90 L.Ed. 95, 161 A.L.R. 1057.

The Supreme Court has most recently addressed itself to the problem in McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223, and Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283. In McGee, a California resident had purchased a life insurance contract from an Arizona corporation whose insurance obligations were later assumed by International. Neither insurance company ever had an office or agent in California; indeed, the only insurance business done by International in California concerned the policy in the McGee case. But under California's Unauthorized Insurers Process Act, Cal.Ins. Code §§ 1610–1612, such single acts by a nonadmitted foreign or alien insurer as the issuance or delivery to residents of contracts insuring the lives or persons of residents or resident property, or the collection of premiums for such contracts, or solicitation of insurance contracts, constitute the appointment of the insurance commissioner as agent for service of process in suits arising out of such transactions, even if the transactions are conducted entirely by mail. A unanimous United States Supreme Court found it "apparent" that service of process upon the Insurance Commissioner of California, who, as directed by the statute, forwarded a copy by registered mail to International's principal place of business in Texas, was sufficient to give California personal jurisdiction over the insurance company.

■ It is now clear that McGee did not mark a complete abandonment of the nineteenth century concept that *in personam* jurisdiction must be limited by notions of territoriality in view of the limitations stated in Hanson v. Denckla, supra, 357 U.S. 235, 251, 78 S.Ct. 1228, 2 L.Ed.2d 1283. There the transaction at issue occurred entirely outside the state asserting jurisdiction. A Pennsylvania domiciliary executed a deed of trust in 1935 to a Delaware trust company as trustee and delivered the corpus—corporate securities—to the trustee. In 1944, the settlor became a Florida resident and remained so until her death in 1952. The Florida courts claimed jurisdiction over the Delaware trustee under a Florida statute permitting service of process by publication upon parties to a proceeding involving the construction of a will. The issue was whether the settlement of the trust was truly *inter vivos* or in fact testamentary. The Court, sharply divided in a five-to-four decision, found that the nonresident corporate trustee lacked sufficient contacts with Florida to warrant its subjection to the jurisdiction of that state's courts. The majority affirmed the necessity of certain essential contracts with the territory in which the action is brought, which were present in McGee, but missing in the case then before it:

"The cause of action in this case is not one that arises out of an act done or transaction consummated in the forum State. In that respect, it differs from McGee v. International Life Ins. Co., 355 U.S. 220 [78 S.Ct. 199, 2 L.Ed.2d 223], and the cases there cited."

Thus the long arm of state courts is permitted to reach out-of-state defendants only in suits growing out of acts which have created contacts with the forum state, however limited or transient such contacts may be.

■ The Vermont statute represents a practical—and we think successful—attempt to assert jurisdiction in cases where the interests of Vermont residents are affected while staying on the constitutional side of the line that divides McGee and Hanson. This conclusion seems especially warranted under the construction of the statute by the Vermont supreme court in Smyth v. Twin State Improvement Corp., 116 Vt. 569, 80 A.2d 664, 668, 25 A.L.R.2d 1193, which is, of course, binding on us. In that case a Massachusetts roofer negligently placed holes in the roof and sides of a Vermonter's house while it was endeavoring to reroof the house. The Vermont court rejected an attack on the constitutionality of the act by stressing the statute's rationale: "No sound reason appears to

exist why foreign corporations may not be held responsible in Vermont for wrongful acts done in Vermont. If a foreign corporation voluntarily elects to act here, it should be answerable here and under our laws. The consequences imputed to it lie within its own control, since it need not act within this state at all, unless it so desires." The act by a foreign corporation which will subject it to Vermont's jurisdiction under 12 V.S.A. § 855 must be one which the foreign corporation could know to have potential consequences in Vermont. Otherwise the statute could not be rationalized on the ground that the foreign corporation's subjection to Vermont laws is, in effect, its own doing. This interpretation of the statute would seem to insure its use only in cases where the minimum contacts required by Hanson and McGee are present.

As can be seen from the language of 12 V.S.A. § 855, the statute comprehends two types of activity: contracting and tortious conduct. It is impossible to imagine a case arising from a contract made by a foreign corporation "with a resident of Vermont to be performed in whole or in part by either party in Vermont" where contacts with Vermont would not suffice to sustain jurisdiction. The statute merely characterizes the extent of contacts with the forum state actually present in McGee. While Hanson affirms the necessity of a defendant's having such "minimal contacts" with the forum state, that case in no sense can be taken as increasing the requirements which the Court found to be satisfied in McGee. The wording of the statute which makes a tort committed in whole or in part against a resident of Vermont the basis for that state's assertion of jurisdiction might have given rise to a serious constitutional question had not the Vermont supreme court interpreted it as applicable only where the tortfeasor could know that its act might have consequences in Vermont. Thus, should a New York plumbing company negli-

gently repair a heater for a New York resident in New York and subsequently the New Yorker move to Vermont with the heater, the erstwhile New Yorker would not be able to avail himself of 12 V.S.A. § 855 in a suit to recover for injuries sustained when the heater exploded in Vermont, for the New York corporation never elected to act in Vermont, as the Smyth case requires, 116 Vt. 569, 80 A.2d 664, 668, quoted above.

█ In the case before us the defendants' contacts with the forum state are quite ample. The picture which emerges from the evidence is of a regular and continuous Vermont business in the defendants' product. Rheem hot water heaters with incorporated Robertshaw Fulton Controls, intended for sale in northwestern Vermont, were shipped to Rheem's franchise wholesaler for that area, Blodgett Supply Company of Burlington, Vermont, and were in turn sold to retailers in the area, such as Newton Appliance Company of Burlington, from which the water heater here involved was purchased. Rheem distributed various dealer promotional and service brochures to Newton Appliance, as well as instructed Blodgett on distribution and service techniques. Representatives of Robertshaw Fulton made "calls" on Newton Appliance to leave various instructional and promotional materials on the Unitrol control, used on Rheem water heaters. In addition, instruction on the operation of the control was given to employees of Newton Appliance. As our discussion below shows, the tort was obviously committed in Vermont. Certainly holding these defendants responsible to Vermont law comports well with the notions of due process enunciated by the Supreme Court in McGee and Hanson. We therefore sustain the jurisdiction of the district court.

█ Defendants contend that the trial judge improperly submitted to the jury the issue of negligence, in the absence of any evidence to support it. The

evidence of negligence was limited,[2] but not so limited that Judge Gibson would have been justified in keeping it from the jury. It seems likely, however, that the jury rejected plaintiffs' slight direct evidence of negligence and relied in reaching its verdict upon the doctrine of *res ipsa loquitur* or warranty; and it is to those issues that we now turn.

■■■ Defendants assign as error the action of the trial judge in charging on the doctrine of *res ipsa loquitur*. Under the familiar principles of Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487, we are bound to look to the law of Vermont to ascertain the elements of the doctrine, in order to determine whether it was properly applied to the facts of this case. The Vermont supreme court, speaking in McDonnell v. Montgomery Ward & Co., 121 Vt. 221, 154 A.2d 469, 473, and Marsigli v. C. W. Averill Co., 123 Vt. 234, 185 A.2d 732, 733, recently outlined the requirements for application of *res ipsa loquitur*:

" * * * It is the requirement of our decisions that the evidence must manifest: 1. A legal duty owing from the defendant to the plaintiff to exercise a certain degree of care in connection with a particular instrumentality to prevent the very occurrence that has happened. 2. The subject instrumentality at the time of the occurrence must have been under the defendant's control and management in such a way that there can be no serious question concerning the defendant's responsibility for the misadventure of the instrument. 3. The instrument for which the defendant was responsible must be the producing cause of the plaintiff's injury. 4. The event which brought on the plaintiff's harm is such that would not ordinarily occur except for the want of requisite care on the part of the de-

fendant as the person responsible for the injuring agency."

Defendants criticize the submission of the issue here by saying that the element of control and management by them was absent. Plaintiffs reply that there was evidence that the control unit was factory-sealed, and that it remained in that condition until it was disassembled by their expert after the explosion. This seems to satisfy the requirement of control set out by the McDonnell case. In any event, under Vermont law, application of *res ipsa loquitur* is not strictly limited to those cases in which the injurious agency is under defendants' control at the time of the accident; it is sufficient if it appears that such agency was in their control at the time of the negligent act which caused the injury. Joly v. Jones, 115 Vt. 174, 181–183, 55 A.2d 181, 186–187.

■■■ Judge Gibson also submitted to the jury the issue of breach of warranty as an alternative ground of recovery, and to this the defendants take vigorous exception. The judge charged, essentially, that a manufacturer of an article which would be dangerous to life or limb if defectively manufactured impliedly warrants its fitness for the benefit of all who are likely to be hurt by the use of an unfit item. The charge abandoned the well-established view still held by a majority of American states, that privity of contract between plaintiff and defendant is necessary in a suit for breach of warranty and that, absent such privity, the action should sound in tort on the theory outlined by Judge Cardozo's landmark opinion in MacPherson v. Buick Motor Co., 217 N.Y. 382, 111 N.E. 1050, L.R.A.1916F, 696. The Vermont supreme court has not spoken to this issue, and thus Judge Gibson was anticipating, rather than following, Vermont law under the Erie principle. Our duty is similar: It "is not to surmise which line of judicial precedent a Ver-

---

2. Plaintiffs' theory, as presented by their expert, was that the accident happened because water had gotten into the control mechanism and corroded it, causing the automatic shutoff valve to stick. There was no evidence to show how the water could have entered the control device.

mont court would follow * * *, but rather, by looking to the same sources which a Vermont court would presumably consult and by weighing the comparative reasoning of learned authors and conflicting judicial decisions for their intrinsic soundness, to define the pertinent law which when thus ascertained is presumably the law of Vermont even though as yet unannounced by a Vermont Court." Socony-Vacuum Oil Co. v. Continental Casualty Co., 2 Cir., 219 F.2d 645, 647.

While we recognize that the position adopted by Judge Gibson is still a minority view, we agree that it reflects a more modern conception of manufacturers' liability than does the traditional requirement of privity. Results which are consonant with justice are not always to be reached by a mere counting of noses, judicial or otherwise, although it does give us comfort to realize that we are not alone in our holding on this issue.[3] Defendants argue that, in any event, Vermont's adoption of the Uniform Sales Act, particularly 9 V.S.A. § 1549, should have foreclosed the jury's consideration of the warranty issue in this case; the section referred to requires that notice of a breach of warranty be given by buyer to seller, and there was no proof that such notice was given in this case. Again, the law of Vermont is silent on this issue. The short answer to defendants' argument is that this action was not brought by a buyer, and thus 9 V.S.A. § 1549 has no application. See LaHue v. Coca-Cola Bottling Co., 50 Wash.2d 645, 314 P.2d 421. Moreover, defendants have not demonstrated that they were prejudiced by lack of notice prior to service of the complaint. Cf. Pritchard v. Liggett & Myers Tobacco Co., 3 Cir., 295 F.2d 292, 298–299. The question is academic, however, since neither defendant took exception to Judge Gibson's charge on notice; and hence it is not properly an issue before us on this appeal. Fed.R.Civ. P. 51.

It is argued that Judge Gibson erred in admitting the opinion testimony of plaintiffs' expert Dr. John Outwater, which, we are told, was founded only upon speculation and surmise, and thus inadmissible under Vermont law. See Platt v. Shields, 96 Vt. 257, 119 A. 520. Dr. Outwater's opinion as to the cause of the accident appears to us to have been based on his own personal observations of the condition of the control unit at the time at which he disassembled it, some five months after the accident. The record indicates that Dr. Outwater had previously recounted the facts of those observations. We hold this sufficient factual basis for opinion testimony to comply with the requirement of such cases as Platt, supra.

Defendants' claims of error as to the conduct of the trial are not well taken. Statements by plaintiffs' counsel in opening that they were claiming $250,000 and would prove $247,352 do not call for reversal when the judge made it clear to the jury that the attorney's argument was not evidence and that the fixing of damages was its responsibility and when further the verdict of $80,000 was not excessive on the evidence. The use by an attorney of a blackboard to demonstrate the elements of damage is permissible within the discretion of the trial judge. We find no error in the charge.

Affirmed.

---

3. See, e. g., State Farm Mut. Automobile Ins. Co. v. Anderson-Weber, Inc., 252 Iowa 1289, 110 N.W.2d 449; Chapman v. Brown, D.C.Hawaii, 198 F.Supp. 78, aff'd Brown v. Chapman, 9 Cir., 304 F.2d 149; McQuaide v. Bridgeport Brass Co., D.C.Conn., 190 F.Supp. 252; B. F. Goodrich Co. v. Hammond, 8 Cir., 269 F.2d 501; Rupp v. Coca-Cola Bottling Co., 187 Kan. 390, 357 P.2d 802; Spence v. Three Rivers Builders and Masonry Supply Co., 353 Mich. 120, 90 N.W.2d 873; Henningsen v. Bloomfield Motors, Inc., 32 N.J. 358, 161 A.2d 69, 75 A.L.R.2d 1; and Picker X-Ray Corp. v. General Motors Corp., Mun.App., D.C., 185 A.2d 919, citing many cases. For cases contra see, e. g., Smith v. Salem Coca-Cola Bottling Co., 92 N.H. 97, 25 A.2d 125, and Pelletier v. Dupont, 124 Me. 269, 128 A. 186, 39 A.L.R. 972; and for full discussion see Prosser, The Assault upon the Citadel (Strict Liability to the Consumer), 69 Yale L.J. 1099 (1960).