Albert J. WASIK, Plaintiff-Appellee,

v.

Robert W. BORG, Defendant and Third-Party Plaintiff,

v.

FORD MOTOR COMPANY, Third-Party Defendant-Appellant.

No. 457, Docket 34176.

United States Court of Appeals, Second Circuit.

Argued Feb. 9, 1970.

Decided March 10, 1970.

Frederic W. Allen, Burlington, Vt. (Wick, Dinse & Allen, Burlington, Vt., on the brief), for third-party defendant-appellant.

Robert A. Bloomer, Rutland, Vt. (Bloomer & Bloomer, Rutland, Vt., on the brief), for plaintiff-appellee.

Before LUMBARD, Chief Judge, and FRIENDLY and FEINBERG, Circuit Judges.

FEINBERG, Circuit Judge:

While driving his station wagon in Rutland, Vermont, Robert W. Borg rammed into the rear of a vehicle operated by appellee Albert J. Wasik, injuring both Wasik and his automobile. Wasik sued Borg, a resident of Maryland, in the United States District Court for the District of Vermont, basing jurisdiction on diversity of citizenship. Borg served a third-party complaint on appellant Ford Motor Company, alleging that the accident was due to a dangerous defect in the design or manufacture of the automobile, which had caused it to accelerate suddenly. Ford answered, denying Borg's claims and alleging his contributory negligence. Ford also filed an answer to Wasik's original complaint, denying knowledge of the facts of the accident. Trial was held in the summer of 1969 before the late Ernest W. Gibson, J., and a jury, which found that Ford—but not Borg—was liable to Wasik. Damages were assessed at $8,700, and judgment was entered in that amount. On Ford's appeal, we affirm.

■ The jury indicated by its verdict that it believed that Borg was free from negligence, and that the accident was caused exclusively by a defect in the design or manufacture of his vehicle. Ford contends that it was improper to hold it directly liable to Wasik because Ford was a mere third-party defendant whose liability was contingent on the liability of Borg, for whom the jury found. In another age this argument might have been persuasive, but appellant has ignored two vital factors which we consider dispositive—the course of the proceedings below and the Federal Rules of Civil Procedure. While it would doubtless have been better if appellee Wasik had amended his complaint to include a claim against Ford once it became obvious that a major theory of recovery was to be Ford's liability as manufacturer of a defective product, Wasik's failure to do so does not require reversal.

Rule 14(a) specifically contemplates that

> The plaintiff may assert any claim against the third-party defendant arising out of the transaction or occurrence that is the subject matter of the plaintiff's claim against the third-party plaintiff * * *.

and Rule 15(b) provides:

> When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues. * * *

Borg's complaint put Ford on notice that it would be called to account for alleged defects in its product leading to the accident. Throughout the trial, Ford was apparently treated by counsel and the trial judge as a defendant subject to direct liability. The trial record makes it clear that Ford had the opportunity to, and did, litigate all the factual issues essential to the jury verdict, particularly Borg's claim that the throttle cable on his Ford vehicle was in a "runaway condition." All the issues were raised, either by Wasik's pleadings or by Borg's. And it is also evident that counsel for Wasik early sought the benefit of Borg's theory of the accident. Borg was cross-examined as part of Wasik's main case; Wasik's counsel encouraged Borg to describe his non-negligent operation of the vehicle both before and after its sudden "take off." Appellant cross-examined both Wasik and Borg during this early stage of the trial. Had the parties not understood that Ford could be held directly liable to appellee, this tactic of Wasik would hardly be explicable; if the jury were to find, as it ultimately did, that Borg had not been negligent and that the vehicle had been defective, appellee could recover only from Ford, if at all. We see no reason to treat issues which were fully litigated as if they had not been litigated, where no prejudice to appellant has been suggested or is apparent from the record.[1] Under these circumstances, we do not think it was error for the trial judge to treat appellant as a defendant potentially subject to primary liability. See Falls Industries, Inc. v. Consolidated Chemical Industries, Inc., 258 F.2d 277, 283–287 (5th Cir. 1958); 3 J. Moore, Federal Practice ¶ 15.13.

■■ Appellant also argues that the trial judge misstated the law of Vermont concerning the strict liability of

1. It is undisputed that Wasik never formally sought to amend his complaint prior to or during trial to assert a claim directly against Ford. Such a formal motion was made in this court, and if it were necessary to rule upon it, we would grant it.

the seller of a product. Judge Gibson charged the jury as follows:

> [T]he special liability of a seller in this type of case and as applicable to this case * * * is as follows:
>
> If Ford Motor sells an automobile in a defective condition, unreasonably dangerous to the user or innocent bystander or his property, it is subject to liability for physical harm thereby caused to said innocent bystander or to his property, if Ford is engaged in the business of selling automobiles, this applies to manufacturers and retailers similarly, and the car is expected to, and does reach the user or innocent bystander without substantial change in the condition in which it is sold.

The judge's unstated premise was that the scope of strict liability in this diversity case is determined by the law of the place of injury rather than by the law of the place of sale, which was apparently Maryland. This was correct. Cf. George v. Douglas Aircraft Co., 332 F. 2d 73, 76–77 (2d Cir.), cert. denied, 379 U.S. 904, 85 S.Ct. 193, 13 L.Ed.2d 177 (1964). The controversial element of the charge is that it accepts the Restatement (Second) of Torts § 402A as the law of Vermont, and moreover, concludes that the rule of strict liability applies in Vermont to innocent bystanders, notwithstanding the neutral *caveat* and commentary which accompanies that section. Restatement (Second) of Torts § 402A, at 348, 356–57 (1965).[2] This is an advanced doctrine for any court to adopt, particularly for a federal court applying state law which has not yet fully crystallized. However, it is by no means an unusual position. Since adoption of section 402A by the American Law Institute, several courts have extended it to afford recovery to injured bystanders.[3] We agree with the district judge's estimate of the likely development of law in the courts of Vermont.[4] Indeed, we reached a strikingly similar conclusion in Deveny v. Rheem Manufacturing Co., 319 F.2d 124 (2d Cir. 1963), and subsequent developments in Vermont, both judicial and legislative, tend to support the position we took in that case.

The plaintiff in *Deveny*, a summer guest in her aunt's home, was injured by an exploding water heater. The court considered Judge Gibson's charge on the issue of breach of warranty, which we described as essentially

> that a manufacturer of an article which would be dangerous to life or limb if defectively manufactured impliedly warrants its fitness for the benefit of all who are likely to be hurt by the use of an unfit item.

*Id.* at 129. Although we noted that

2. Section 402A provides:
    (1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if
    (a) the seller is engaged in the business of selling such a product, and
    (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.
    (2) The rule stated in Subsection (1) applies although
    (a) the seller has exercised all possible care in the preparation and sale of his product, and
    (b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.

3. See, e. g., Caruth v. Mariani, 11 Ariz. App. 188, 463 P.2d 83 (1970); Elmore v. American Motors Corp., 75 Cal.Rptr. 652, 451 P.2d 84 (Cal.1969); Mitchell v. Miller, 26 Conn.Sup. 142, 214 A.2d 694 (1965); Darryl v. Ford Motor Co., 440 S.W.2d 630 (Tex.1969). The strict liability concept embodied in § 402A, in its more limited application to ultimate "user or consumer," has been widely accepted by state courts, most recently by Vermont's neighbor, New Hampshire. See Buttrick v. Arthur Lessard & Sons, Inc., 260 A.2d 111, (N.H.1969).

4. See Sills v. Massey-Ferguson, Inc., 296 F.Supp. 776 (N.D.Ind.1969) (construing Indiana law).

[t]he charge abandoned the well-established view still held by a majority of American states, that privity of contract between plaintiff and defendant is necessary in a suit for breach of warranty and that, absent such privity, the action should sound in tort * * *,

that the Supreme Court of Vermont had been silent on the issue, and that "Judge Gibson was anticipating, rather than following, Vermont law," *id.*, we approved Judge Gibson's advanced position.

> While we recognize that the position adopted by Judge Gibson is still a minority view, we agree that it reflects a more modern conception of manufacturers' liability than does the traditional requirement of privity. Results which are consonant with justice are not always to be reached by a mere counting of noses, judicial or otherwise, although it does give us comfort to realize that we are not alone in our holding on this issue.

*Id.* at 130 (footnote omitted). Two years later the Supreme Court of Vermont decided O'Brien v. Comstock Foods, Inc., 125 Vt. 158, 212 A.2d 69 (1965). While the opinion does not cite *Deveny*,[5] it dispenses with the privity requirement between the consumer of defective food and the processor. Since the *O'Brien* opinion is based on a warranty theory and plaintiff there was a consumer of food, the case is distinguishable, but it does use expansive language and cites many of the important articles and the developing case law in other jurisdictions. At one point the court indicated that it is

> not restrained by any precedent in this jurisdiction where the requirement of privity has been applied to products liability. We must find the

5. *Deveny* was cited, but on an unrelated point, in an earlier opinion in *O'Brien*, 123 Vt. 461, 194 A.2d 568, 571 (Vt.1963), which is not relevant to this discussion.

6. UCC § 2–318 (Alternative B) provides:
   A seller's warranty whether express or implied extends to any natural per-

applicable law as it has developed and grown in other jurisdictions.

*Id.* at 71. Cf. Rothberg v. Olenik, 262 A.2d 461, (Vt. 1970). See also 2 Frumer & Friedman, Products Liability § 16.04 [2] [b] [xxii] (1968).

Bosley v. Central Vermont Public Service Corp., 255 A.2d 671 (Vt. 1969), replied upon by appellant, is not really in point. That case refused to extend "strict liability for abnormally dangerous conditions and activities," *id.* at 673, to transmission of electricity by a power company. It dealt with a type of strict liability distinct from products liability, the rare extrahazardous activity case. *Bosley* does not discuss or cite *O'Brien* or *Deveny*.

We also think that what Vermont did when it adopted the Uniform Commercial Code ("UCC") in 1966 is highly significant. Section 2–318 of the UCC is entitled "Third Party Beneficiaries of Warranties Express or Implied." The Official Text of the section, now designated as Alternative A, says that a seller's warranty "extends to any natural person who is in the family or household of his buyer or who is a guest in his home if it is reasonable to expect that such person may use, consume or be affected by the goods and who is injured in person by breach of the warranty." But when Vermont adopted the Code, it broadened § 2–318 to read:

> A seller's warranty whether express or implied extends to any natural person if it is reasonable to expect that such person may use, consume or be affected by the goods and who is injured in person by breach of the warranty. * * *

9A Vt.Stat.Ann. § 2–318. The Vermont version is substantially identical to Alternative B of § 2–318,[6] which the UCC

son who may reasonably be expected to use, consume or be affected by the goods and who is injured in person by breach of the warranty. A seller may not exclude or limit the operation of this section.

Draftsmen's Comment describes as "designed for states where the case law has already developed further and for those that desire to expand the class of beneficiaries." [7] We view Vermont's expansion of § 2–318 as another strong indication that the district judge was correct in concluding that the Vermont courts would follow section 402A, and apply it to an innocent bystander. Certainly, in the words of Alternative B, it is "reasonable to expect" that occupants of other vehicles may "be affected" by a defect in an automobile. We realize that section 402A proceeds on a theory of tort,[8] while UCC § 2–318 is phrased in terms of warranty. But we believe that the Vermont courts, in passing on the ultimate scope of the supplier's liability under the tort theory, will look to the legislature's expansion of the scope of protection under the alternative warranty theory as a guide. Moreover, although § 2–318 (Alternative B) covers only injuries to the person, we believe that if the Vermont courts extend section 402A to persons who may reasonably be expected to be injured as a result of a defect in the goods, as we think they will, they will include property damage as well. In any event, the damage to Wasik's car appears to have been relatively slight.

█ Appellant's last contention is that there was no evidence from which the jury could find that the Borg vehicle was in a defective condition when sold. However, there was evidence that after the accident the throttle cable and bracket were improperly connected. Since the jury apparently believed Borg's testimony that the car "took off" spontaneously, it was a proper inference that the defective condition of the cable system existed prior to the accident and at the time the vehicle was delivered to Borg, less than six weeks before the accident.

Judgment affirmed.

7. UCC § 2–318, Comment 3.

8. Restatement (Second) of Torts § 402A, at 354–55 (1965).