Odessa MOSLEY, et al., Plaintiffs,

v.

WYETH, INC., et al., Defendants.

Civil Action No. 09–0284–KD–C.

United States District Court,
S.D. Alabama,
Southern Division.

June 28, 2010.

Thomas Edward Dutton, Pittman, Hooks, Dutton & Hollis, P.C., Birmingham, AL, Alexandra Vanassa Boone, Javier Gonzalez, William Burton Curtis, Miller, Curtis & Weisbrod, Dallas, TX, Daniel J. McGlynn, Terrence Joseph Donahue, McGlynn Glisson & Mouton, Baton Rouge, LA, for Plaintiffs.

Jeffrey R. Pilkington, Davis Graham & Stubbs LLP, Denver, CO, Philip H. Butler, Bradley Arant Boult Cummings LLP, Montgomery, AL, Frederick George Helmsing, Jr., McDowell Knight Roedder & Sledge, L.L.C., Edward G. Bowron, Burr & Forman, LLP, Mobile, AL, Andrew J. Calica, Henniger S. Bullock, Mayer Brown LLP, New York, NY, Joseph P. Thomas, Columbus, OH, Thomas Gene McIntosh, Cincinnati, OH, Kathleen T. Cobb Kaufman, Mobile, AL, Linda A. Maichl, Cincinnati, OH, Rex Allen Littrell, Jon W. Oebker, Tucker Ellis & West LLP, Richard A. Dean, Hugh M. Stanley, Cleveland, OH, for Defendants.

## ORDER

KRISTI K. DuBOSE, District Judge.

This matter is before the Court on Wyeth, Inc. ("Wyeth") and Schwarz Pharma, Inc. ("Schwarz," and, together with Wyeth, the "Reglan manufacturers")' motion for summary judgment (Docs. 73, 74, & 75), reply brief (Doc. 84), and notices of supplemental authority (Docs. 88, 93, 94, 111, & 128), and the plaintiffs' response in opposition (Doc. 83) and notice of supplemental authority (Doc. 98). For the reasons set forth herein, the Reglan manufacturers' motion for summary judgment is **GRANTED.**

1. Rule 56(c) of the Federal Rules of Civil Procedure, provides that "summary judgment shall be granted if the pleadings, the discovery and disclosure materials on file, and any

## I. *Summary Judgment Standard*

Summary judgment should be granted only if "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c).[1] The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991). The party seeking summary judgment also always bears the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). If the non-moving party fails to make "a sufficient showing on an essential element of her case with respect to which she has the burden of proof," the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548. However, "[i]n reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter. Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Tipton v. Bergrohr GMBH–Siegen*, 965 F.2d 994, 998–999 (11th Cir. 1992), *cert. den.*, 507 U.S. 911, 113 S.Ct. 1259, 122 L.Ed.2d 657 (1993) (internal citations and quotations omitted). The mere existence of a factual dispute will not auto-

affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c).

matically necessitate denial; rather, only factual disputes that are material preclude entry of summary judgment. *Lofton v. Secretary of Dept. of Children & Family Serv.*, 358 F.3d 804, 809 (11th Cir.2004), *cert. den.*, 543 U.S. 1081, 125 S.Ct. 869, 160 L.Ed.2d 825 (2005).

## II. *Analysis*

### A. Background[2]

Metoclopramide is a prescription drug approved by the FDA to treat gastroesophageal reflux disease and diabetic gastroparesis. (Doc. 1, ¶ 3.72; Doc. 74, p. 8; Doc. 83, p. 6). Metoclopramide is available in both brand-name ("Reglan") and generic formulations. (Doc. 74–1, ¶ 6; Doc. 83, p. 6).

At different times during the time period relevant to the Mosleys' complaint, Defendants Wyeth and Schwarz manufactured and distributed Reglan and were each at a relevant point in time the reference-listed drug ("RLD") holder for metoclopramide. (Doc. 74, p. 9; Doc. 83, pp. 6 & 9).

Defendant Actavis–Elizabeth, LLC, a wholly owned subsidiary of Defendant Actavis, Inc. (together with Actavis–Elizabeth, LLC, "Actavis") and the successor to Purepac Pharmaceutical Inc., is a manufacturer and distributor of generic metoclopramide. (Doc. 1, at ¶¶ 1.05, 3.05, & 3.59). Defendant Pliva USA, Inc. ("Pliva") is also a manufacturer and distributor of generic metoclopramide. (*See id.* at ¶¶ 3.04 & 3.59).

Sometime in 2005, Odessa Mosley's treating physician prescribed Reglan at a dosage of 10 mg to treat her reflux, nausea and vomiting. (Doc. 1, ¶ 3.08). After Mrs.

Mosley ingested metoclopramide tablets as prescribed on a long-term basis, she began exhibiting abnormal body movements "which have since been linked to her use of Reglan/metoclopramide" (*id.* at ¶¶ 3.11– 3.13, & 3.15) and ultimately developed a movement disorder called tardive dyskinesia as a result of taking metoclopramide (*id.* at ¶¶ 3.16).

On February 26, 2009, the federal Food and Drug Administration ("FDA") issued a safety alert and ordered manufacturers of metoclopramide to add a "Black Box Warning" to their labels. (Doc. 83, p. 10). The warning indicates that the prevalence of tardive dyskinesia among patients using metoclopramide beyond twelve weeks may be as high as 20%, 100 times greater than previous warnings had indicated. (*Id.*).

Plaintiffs Odessa and Ulysses Mosley (together, "the Mosleys") initiated this lawsuit by filing a complaint on May 21, 2009, alleging claims against all defendants of negligence, strict liability, breach of warranty, misrepresentation and fraud, and gross negligence. (Doc. 1, ¶¶ 4.01– 5.03).[3]

On September 4, 2009, the Mosleys served a Notice of Product Identification stating that "based on the available information consisting of the pharmacy records from Target Pharmacy and Walgreen's pharmacy," Mrs. Mosley's prescription records "reflect the following manufacturers of ... metoclopramide she ingested[:] Pliva, Inc [, and] Purepac (now Actavis)." (Doc. 74–3).

The Reglan manufacturers timely filed the instant motion for summary judgment (Doc. 73) as to "all claims against Wyeth and Schwarz" on the basis that "[t]he un-

---

2. All factual allegations are construed in the light most favorable to the plaintiff. *See, e.g., Brower v. County of Inyo*, 489 U.S. 593, 598, 109 S.Ct. 1378, 103 L.Ed.2d 628 (1989); *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1261 (11th Cir.2006).

3. Odessa Mosley's husband, Ulysses Mosley, seeks damages for lack of consortium. (Doc. 1, at 24).

disputed fact that Mrs. Mosley did not purchase or ingest any metoclopramide what were manufactured or sold by Wyeth or Schwarz is dispositive of Plaintiffs' claims under Alabama law." (Doc. 74, p. 24).

According to the plaintiffs, they "do not allege that Wyeth or Schwarz manufactured the metoclopramide which caused Ms. Mosley'[s] injuries, and the theories of liability alleged against these defendants are not in the nature of products liability claims.... Plaintiffs' claims for strict liability are reserved for those Defendants that actually manufactured the metoclopramide that Mrs. Mosley ingested, not Wyeth and Schwarz." (Doc. 83, p. 17).

However, the Mosleys contend in opposition to the Reglan manufacturers' motion for summary judgment that the Reglan manufacturers, "as the producer of Reglan, the Reference Listed Drug for [the] generic metoclopramide" that Mrs. Mosley ingested (*Id.*, pp. 6–7), were

> responsible for authoring and disseminating misrepresentations regarding the risk of tardive dyskinesia with long-term use of metoclopramide for which they had no scientific support. Both defendants were aware of the increased risk associated with prolonged use of metoclopramide, and chose to withhold this information from the FDA and health care providers....

(*Id.*, p. 19). The Mosleys insist that "[i]n the regulatory framework for drugs approved by the FDA," a New Drug Application ("NDA") holder is "primarily responsible for the labeling and warnings given to prescribing physicians and patients," and that "an NDA holder [therefore] has a duty to ensure that the information provided is accurate and complete. If an NDA holder negligently or intentionally misrepresents the dangers associated with a drug, even if the drug is properly manufactured, it is foreseeable that an individual may be injured due to the information contained in its label." (Doc. 83, pp. 8, 11–12). The plaintiffs further contend that "[a]s the RLD holder, Wyeth and Schwarz voluntarily assumed *heightened* duties and responsibilities imposed by the Code of Federal Regulation ...," citing specific regulations in support of their claims. (*Id.*).

> The Mosleys also explain that their
>
> claims against Wyeth and Schwarz do not relate to the composition or manufacture of the metoclopramide [Mrs. Mosley] ingested, but rather focus[ ] on the inaccurate and insufficient information promulgated by [the Reglan manufacturers] and by which the drug was prescribed. This false information created a sense of security and safety regarding metoclopramide which caused or contributed to the misuse of the drug by Plaintiff's prescribing doctor, and led directly to the severe damages suffered by Plaintiff.

\* \* \*

The argument is not that Defendants' product caused Plaintiff harm,[4] but rath-

---

4. The Mosleys alleged in their complaint that "Wyeth manufactures and distributes generic metoclopramide through its ownership of ESI Lederle, Inc. (hereinafter "ESI"), a former subsidiary which merged into Wyeth," (Doc. 1, ¶¶ 1.02, 3.02). As previously noted, the Reglan manufacturers moved for summary judgment as to all of the plaintiffs' claims. In their opposition to the motion, however, the Mosleys included no evidence or argument suggesting that Mrs. Mosley consumed generic metoclopramide produced by ESI.

Accordingly, summary judgment is **GRANTED** as to any and all putative claims against Wyeth based on ESI's actions or omissions, which the Mosleys have failed to prosecute. *See Ledford v. Peeples*, 605 F.3d 871, 900, n. 78 (11th Cir.2010) (treating as abandoned claims not argued in briefs); *see also Julceus v. City of North Miami*, 2009 WL 3818430, *7,

er that their dissemination of false and misleading information, which they knew would be relied upon by the generic manufacturers in generating their own labels, was the direct and proximate cause of Plaintiff's injuries.

(*Id.,* p. 7–8).

## B. Legal Conclusions

Jurisdiction obtains pursuant to 28 U.S.C. § 1332 (Docs. 1, 18, 19, 27 & 103), and this Court is bound to apply Alabama substantive law. *See Erie R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

### 1. Misrepresentation Claims

#### a. Negligent Misrepresentation

■ In situations " 'involving negligent misrepresentations relied upon by third parties, or parties who were not in privity of contract with the person making the misrepresentation,' " Alabama's "Supreme Court has instructed that liability for negligent misrepresentation is predicated upon the existence of a duty." *Cooper v. Bristol–Myers Squibb Co.,* 2009 WL 5206130 (D.N.J.2009) (applying Alabama law and quoting *Fisher v. Comer Plantation, Inc.,* 772 So.2d 455, 461 (Ala.2000)).

The Mosleys argue that Section 552 of the Restatement (Second) of Torts[5] gov-

erns their negligent misrepresentation claims. (Doc. 83, p. 18). Alabama has adopted Section 552 of the Restatement in cases alleging negligent misrepresentation to "provide[ ] a cause of action for professional negligence." *Hewlett–Packard Co. v. Intergraph Corp.,* No. C03–2517 MJJ, 2004 WL 1918891, at *2 (N.D.Cal.2004) (applying Alabama law); *see also Legg v. Wyeth,* 428 F.3d 1317 (11th Cir.2005) ("the Alabama Supreme Court has adopted the Restatement (Second) of Torts § 552[ ] as the law of Alabama in cases involving negligent misrepresentation")(citing *Fisher v. Comer Plantation, Inc.,* 772 So.2d 455, 461 (Ala.2000)); *Boykin v. Arthur Andersen & Co.,* 639 So.2d 504, 509–10 (Ala.1994) (adopting the Restatement rule to govern the professional liability of accountants).

Although Alabama's Supreme Court has made clear that its "application of the Restatement approach" is not "restrict[ed] ... to ... one class of professionals," it has indicated that the rule "subjects to liability only such persons as make it a part of their business or profession to supply information for the guidance of others in their business transactions." *Fisher,* 772 So.2d at 462 (citing comment c to Section 552 of the Restatement and concluding that "Section 552 would clearly, by

n. 3 (S.D.Fla.2009) (same); *Hunter v. City of Mobile,* No. 08–666–KD–M, 2010 WL 618325, n. 5 (Feb. 18, 2010).

**5.** Section 552 of the Restatement (Second) of Torts states as follows:

(1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

(2) Except as stated in Subsection (3), the liability stated in Subsection (1) is limited to

loss suffered (a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and (b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.

(3) The liability of one who is under a public duty to give the information extends to loss suffered by any of the class of persons for whose benefit the duty is created, in any of the transactions in which it is intended to protect them.

*Id.* (emphasis added).

its terms, govern real-estate appraisers, who, as an integral part of their business, facilitate real-estate transactions by issuing opinions regarding the value of real property" and "therefore hold[ing] that real estate appraisers are subject to liability for negligent or wanton misrepresentation, on the same basis that accountants are.").

■ Under the restatement, drug manufacturers cannot be classed, at least not in the same sense as accountants and real estate appraisers, as "persons [who] make it a part of their business ... to supply information for the guidance of others in their business transactions." *Fisher*, 772 So.2d at 462; *compare also Boykin*, 639 So.2d at 509–10. Moreover under the facts of this case Wyeth and Schwarz did not engage in any business transaction with the Mosleys. *See Moretti v. Wyeth, Inc.*, 2:08–cv–0396–JCM–(GWF), 2009 WL 749532, at *3 (D.Nev. Mar. 20, 2009) (noting that "Nevada law recognizes the tort of negligent misrepresentation as it is defined in § 552, but has limited the application of that tort to business transactions" and concluding that "[b]ecause Plaintiff never purchased a Wyeth or Schwarz metoclopramide product, there is no business transaction and Plaintiff's claims fail"). Given the limited circumstances under which Alabama has recognized a cause of action for negligent misrepresentation, this court concludes that the Mosleys do not have a negligent misrepresentation claim against the Reglan manufacturers. This conclusion is bolstered by the fact that the Alabama Circuit Court of Jefferson County recently dismissed a similar claim of negligent misrepresentation brought against the same Reglan manufacturers by a plaintiff who, like Mrs. Mosley, had consumed only generic metoclopramide. *See Green v. Wyeth Pharms., Inc. et al.*, CV 06–3917 ER, Order at 1, 2007 WL 6428717 (Ala.Cir.Ct. May 15, 2007).

Summary judgment is **GRANTED** on the plaintiffs' claims of negligent misrepresentation.

**b. Fraudulent (Reckless or Willful) Misrepresentation**

■ An action for fraudulent misrepresentation is governed by Section 6–5–101 of the Alabama Code, rather than by Section 552 of the Restatement. *See Fisher*, 772 So.2d at 463. In order to succeed on a fraudulent misrepresentation claim, a plaintiff must show

1) a misrepresentation of material fact, 2) made willfully to deceive, recklessly, without knowledge, or mistakenly, 3) which was justifiably relied on by the plaintiff under the circumstances, and 4) which caused damage as a proximate consequence.

*Foremost Ins. Co. v. Parham*, 693 So.2d 409, 423 (Ala.1997) (citing Section 6–5–101 of the Alabama Code of 1975 ("[m]isrepresentations of a material fact made willfully to deceive, or recklessly without knowledge, and acted on by the opposite party, or if made by mistake and innocently and acted on by the opposite party, constitute legal fraud"); *Harrington v. Johnson–Rast & Hays Co.*, 577 So.2d 437 (Ala. 1991)); *see also Bagley v. Promenade Group, L.L.C.*, Civ. No. 05–0457–M, 2007 WL 2154163, at *5 (S.D.Ala. Jul. 24, 2007).

■ The Mosleys must also establish that the Reglan manufacturers owed Mrs. Mosley a duty. *Nesbitt v. Frederick*, 941 So.2d 950 (Ala.2006) ("An essential element of fraudulent-misrepresentation ... claims is a duty to disclose"). In Alabama, "[t]he existence of a duty is determined by a number of factors, including (1) the nature of the defendant's activity; (2) the relationship between the parties; and (3) the type of injury or harm threatened." *Pritchett v. ICN Med. Alliance, Inc.*, 938 So.2d 933, 937–38 (Ala.2006) (internal quotation omitted); *Franklin County School Bd. v. Lake Asbestos of Quebec, Ltd.*, Civ.

A. No. 84–AR–5435–NW, 1986 WL 69060, at *6 (N.D.Ala. Feb. 13, 1986) (noting that the traditional elements of a negligence claim, including duty "necessarily imply a *relationship* between the plaintiff and the defendant" and concluding that plaintiffs who relied on an enterprise liability/collective liability/market share negligence liability theory could not maintain such claims, which had been rejected by the Eleventh and Fifth Circuits, as well as by an Alabama trial court). However, "[t]he key factor is whether the injury was foreseeable[6] by the defendant." *Id.* (internal citations omitted); *see also RSUI Group, Inc. v. Willis of Alabama, Inc.,* 2007 WL 2469571, at *2 (S.D.Ala.2007).

The plaintiffs present no evidence or argument tending to establish that a relationship existed between the Mosleys and the Reglan manufacturers. The plaintiffs cite no binding authority for the assertion that a manufacturer of brand-name drugs owes a duty to consumers of the generic version of their products. Nor do the Mosleys cite any binding authority for the contention that an injury resulting from consumption of a generic version of the drug can be considered a "proximate consequence" of a manufacturer's alleged misrepresentation regarding the brand-name version of the drug. Indeed, two Alabama circuit courts that recently ad-

dressed virtually identical claims concluded that no such duty exists. *See Buchanan v. Wyeth Pharm., Inc. et al.,* CV–2007–900065, Order at 1, 2008 WL 7136137 (Ala. Cir.Ct. Oct. 20, 2008); *Green v. Wyeth Pharms., Inc. et al.,* CV 06–3917 ER, Order at 1, 2007 WL 6428717 (Ala.Cir.Ct. May 15, 2007). Moreover, the vast majority of non-binding decisions from other jurisdictions that have addressed the issue do not recognize a duty giving rise to fraudulent misrepresentation claims. *See, e.g., Foster v. Am. Home Prods. Corp.,* 29 F.3d 165, 171 (4th Cir.1994) (concluding that imposing a duty under circumstances similar to those presented in this case "would be to stretch the concept of foreseeability too far," because the relevant (Maryland state) law duty could arise only "when there is such a relation that one party has the right to rely for information upon the other, and the other giving the information owes a duty to give it with care." *Id.* (internal citations and quotation marks omitted)); *Mensing v. Wyeth,* 588 F.3d 603, 613 (8th Cir.2009) ("Since Mensing did not purchase or use [the name brand defendants'] product, ... there was no direct relationship between them...." *Id.* (internal quotation marks omitted)).

The Mosleys argue that "[i]n the regulatory framework for drugs approved by the FDA," an NDA holder such as the Reglan

---

**6.** Regarding the "key" factor of foreseeability, it is worthy to note that Section 34–23–8(1) of the Code of Alabama provides that a pharmacist may substitute a generic for a branded drug only if the physician "expressly authorizes such selection" by signing on a signature line labeled "product selection permitted" or by giving another form of written or oral authorization to dispense a generic product in place of a brand name product designated on the prescription. *See* Ala.Code. § 34–23–8(1) & (4). The plaintiffs point to only one court holding that manufacturers of name-brand drugs may be held liable to plaintiffs who, like Mrs. Mosley, only ingested the generic version of a drug. *See Conte v. Wyeth,* 168 Cal.

App.4th 89, 85 Cal.Rptr.3d 299, 311 (Cal.Ct. App.2008). In so holding, the *Conte* court relied in part on the understanding that "most" states allow pharmacists "to fill prescriptions for name-brand drugs with their generic equivalents unless the prescribing physician expressly forbids such a substitution." *Id.* While in such states it may be "eminently foreseeable that a physician might prescribe generic metoclopramide in reliance on Wyeth's representations about Reglan," *id.,* it stands to reason that such an eventuality is less likely to occur, and therefore less foreseeable, in Alabama. *See* Ala.Code. §§ Sections 34–23–8(1) & (4).

manufacturers is "primarily responsible for the labeling and warnings given to prescribing physicians and patients," and that "an NDA holder [therefore] has a duty to ensure that the information provided is accurate and complete. If an NDA holder negligently or intentionally misrepresents the dangers associated with a drug, even if the drug is properly manufactured, it is foreseeable that an individual may be injured due to the information contained in its label." (Doc. 83, p. 8). The plaintiffs further contend that "[a]s the RLD holder, Wyeth and Schwarz voluntarily assumed *heightened* duties and responsibilities imposed by the Code of Federal Regulation ...," citing specific regulations in support of their claims. (*Id.*).

■ FDA regulations cannot supply the duty element of any of the Mosleys' claims. The fact that federal law allowed generic manufacturers to streamline the approval process by relying on the initial warning labels provided by Wyeth and/or Schwarz, does not create a duty between Wyeth/Schwarz and a generic consumer. As thoroughly explained by the undersigned in a previous order in this case, after ANDA approval, generic manufacturers bear the same burden as brand manufacturers of providing a warning that adequately describes the risks associated with the particular drug they are manufacturing. (*See* Doc. 95, Order Denying Generic Manufacturers' Motions to Dismiss and for Judgment on the Pleadings). In other words, after the initial approval (ANDA approval), the generic manufacturers become responsible for their own warning labels and any necessary revisions.

Accordingly because neither Wyeth nor Schwarz produced or distributed the metoclopramide Mrs. Mosley ingested, the Reglan manufacturers did not owe Mrs. Mosley a duty that would give rise to a cause of action for fraudulent misrepresentation. Summary judgment is **GRANTED** as to **Wyeth and Schwarz** on the plaintiffs' claims of fraudulent misrepresentation.

### 2. Breach of Warranty Claims

Alabama's Supreme Court has specifically affirmed that "[p]laintiff[ ]s may assert breach of implied warranty claims in cases of injury by an unreasonably dangerous product." *Rose v. General Motors Corp.*, 323 F.Supp.2d 1244 (N.D.Ala.2004) (citing *Spain v. Brown & Williamson Tobacco Corp.*, 872 So.2d 101, 111 (Ala.2003)). That is, "a claim alleging breach of an implied warranty of merchantability is separate and distinct from an AEMLD claim and is viable to redress an injury caused by an unreasonably dangerous product." *Spain*, 872 So.2d at 111.

The Mosleys claim that the Reglan manufacturers are liable to them for breach of warranty based on Alabama Code Section 7–2–318, which states:

A seller's warranty, whether express or implied,[7] extends to any natural person

---

7. Section 7–2–313 of the Alabama Code states that "[e]xpress warranties by the seller are created" when a "seller" makes "[a]ny affirmation of fact or promise ... to the buyer which relates to the goods and becomes part of the basis of the bargain...." Ala.Code. § 7–2–313(1)(a) (1975). Such affirmation or promise "creates an express warranty that the goods shall conform to the affirmation or promise." (*Id.*). The same section provides that "[a]ny description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description." (*Id.* at (1)(b)).

Section 7–2–314 of the Alabama Code states that, with certain exceptions, "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind...." *Id.*

Section 7–2–315 of the Alabama Code provides that "[w]here the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or

if it is reasonable to expect that such person may use, consume, or be affected by the goods and who is injured in person by breach of the warranty. A seller may not exclude or limit the operation of this section.

*Id.* The official comments to Alabama Code Section 7–2–318 include the following:

> The purpose of this section is to give certain beneficiaries the benefit of the same warranty which the buyer received in the contract of sale, thereby freeing any such beneficiaries from any technical rules as to "privity." It seeks to accomplish this purpose without any derogation of any right or remedy resting on negligence. It rests primarily upon the merchant-seller's warranty under this Article that the goods sold are merchantable and fit for the ordinary purposes for which such goods are used rather than the warranty of fitness for a particular purpose. Implicit in the section is that any beneficiary of a warranty may bring a direct action for breach of warranty against the seller whose warranty extends to him.

*Id.*, cmt. 2.

And a comment labeled "Alabama Comment" to this section notes that

> As originally enacted, this section differed from the Uniform Commercial Code, as it then existed, in that the words "who is in the family or household of his buyer or who is a guest in his home" were omitted after the words "natural person." In 1966, the Uniform Commercial Code was amended to provide three alternatives for § 2–318. This section is substantially the same as present Alternative B of the Uniform Commercial Code. The "Official Comment" set out above is that of the

amended Uniform Commercial Code for Alternative B.

*Id.*, Alabama cmt.

The Mosleys argue that in interpreting and applying this statute, the Supreme Court of Alabama has held that sellers' warranties, both express and implied, do not require privity between the buyer and seller/manufacturer. The Alabama Supreme Court explained in *Bishop v. Sales,* 336 So.2d 1340, 1344 (Ala.1976):

> The proposed [Uniform Commercial Code] loosened the privity requirements [in breach of warranty suits]. Its intent was to place the buyer's family or household, or a guest in the buyer's home in the same shoes as the buyer with respect to injuries in person. Official Comment No. 3 to the section made it clear that '[b]eyond this, the section is neutral and is not intended to enlarge or restrict the developing case law on whether the seller's warranties, given to his buyer who resells, extend to other persons in the distributive chain.' The Official Comments to the 1962 version of the U.C.C. were placed in the Alabama Commercial Code immediately following § 2–318; however, comments numbered 2 and 3 are inappropriate to the section as enacted in view of Alabama's modified version.
>
> [By contrast, Section] 2–318, as enacted [in Alabama], excluded the words, 'who is in the family or household of his buyer or who is a guest in his home.' By removing these words, the legislature intended to remove the privity requirement horizontally from more situations than did the uniform version.
>
> \* \* \*
>
> .... Sellers and buyers are not limited by definition to retailers and consumers.

judgment to select or furnish suitable goods, there is ... with certain exceptions ... an

implied warranty that the goods shall befit for such purpose." *Id.*

By its terms, a seller is anyone who sells, including a manufacturer or distributor. Thus a manufacturer's or distributor's warranty extends to 'any natural person if it is reasonable to expect that such person may use, consume, or be affected by the goods and who is injured in person by the breach of the warranty.' A manufacturer or distributor intends the products he sells to eventually arrive in the hands of consumers. Thus, by the terms of the statute, a manufacturer's or distributor's warranty would extend to the final buyer-consumer of the product (as well as to other possible parties horizontally)[8] if he is injured in person by the breach of the warranty.

*Id.* (footnotes omitted); *see also Rampey v. Novartis Consumer Health, Inc.,* 867 So.2d 1079, 1087 (Ala.2003) ("... Alabama's version of UCC § 2–318 has abolished the privity requirements in actions involving natural persons."); *Land v. Huffman,* 420 F.Supp. 459 (M.D.Ala.1976) (lack of privity not a defense to a breach of warranty claim alleging personal injuries); *State Farm Fire & Cas. Co. v. J.B. Plastics, Inc.,* 505 So.2d 1223, 1227 (Ala.1987) ("... Alabama's version of U.C.C. § 2–318 has abolished privity requirements in actions involving injuries to natural persons ..."); *Kidd v. Kilpatrick Chevrolet, Inc.,* 613 So.2d 336, 338 (Ala.1993) ("Alabama has abolished privity requirements in actions involving personal injuries....");

*Morris Concrete, Inc. v. Warrick,* 868 So.2d 429 (Ala.Civ.App.2003) (concluding that "the implied warranties of merchantability and fitness for a particular purpose" were available to a third-party beneficiary/buyer and that "the trial court [had] properly considered whether [a manufacturer] breached those warranties."); *CertainTeed Corp. v. Russell,* 883 So.2d 1266, n. 4 (Ala.Civ.App.2003) (noting that under Section 7–2–318, "a seller's warranty extends to any natural person who is 'injured in person' when it is reasonable to expect that person to use or be affected by goods under warranty").

"Alternative B" of Uniform Commercial Code ("UCC") Section 2–318 has been interpreted to permit individuals to sue a manufacturer directly for breach of warranty even when they did not purchase the goods directly from the manufacturer, nor did they consume or use the goods at issue, but were nonetheless directly affected by the goods and suffered personal injury as a result. *See Nacci v. Volkswagen of Am., Inc.,* 325 A.2d 617, 619–20 (Del.Super.Ct.1974) (a child who was physically injured when the bicycle she was riding collided with an automobile manufactured and distributed by Volkswagen was held to be within the class of persons to whom the Volkswagen's warranty extended under § 2–318 of the Delaware Code (Alternative B of Section 2–318 of the UCC)); *Wasik v. Borg,* 423 F.2d 44,

---

**8.** It is worthy to note that the court used the word "parties" rather than "purchasers." In any event, some authorities have maintained that an individual need not be a purchaser in order to obtain "horizontal privity": " 'Horizontal privity' describes the relationship between the original supplier and any non-purchasing party who uses or is affected by the product, such as the family of the ultimate purchaser or a bystander." *Garcia v. Texas Instruments, Inc.,* 610 S.W.2d 456, 463–64 (Tex.1980); *see also* 1 MADDEN & OWEN ON PROD LIAB. (3d ed.2010) § 4:9 ("The ... issue of 'horizontal privity' involves the rights of non-purchasing persons who may be affected by the product and who seek to stand in the purchaser's shoes to obtain the benefits of whatever warranties flowed to the purchaser by virtue of his or her contract of purchase. Such nonpurchasers, extending horizontally away from the purchaser in decreasing order of affinity, include the purchaser's family, members of the purchaser's household and guests in his home, the purchaser's employees, and others often referred to as 'bystanders'...." *Id.*).

48–49 (C.A.2 Vt.1970) (affirming a lower court's decision to allow a plaintiff who was physically injured when his car was rear-ended, allegedly as the result of a dangerous defect in design or manufacture that caused the other driver's automobile to suddenly accelerate, to bring a claim for breach of warranty under § 2–318 of the Vermont Code, which was "substantially identical" to Alternative B of the UCC).

However, Mrs. Mosley does not contend that she used or consumed Reglan, the drug produced by the Reglan manufacturers. Nor is there any evidence that she came into contact with and was therefore affected by [Reglan], the "goods" produced by the Reglan manufacturers. *Id.* Instead, the plaintiffs argue that Mrs. Mosley was affected solely by the alleged breach of warranty pertaining to brand-name Reglan:

> Plaintiff's claims against Wyeth and Schwarz do not relate to the composition or manufacture of the metoclopramide [Mrs. Mosley] ingested, but rather focus[ ] on the inaccurate and insufficient information promulgated by [the Reglan manufacturers] and by which the drug was prescribed. This false information created a sense of security and safety regarding metoclopramide which caused or contributed to the misuse of the drug by Plaintiff's prescribing doctor, and led directly to the severe damages suffered by Plaintiff.
>
> * * *
>
> The argument is not that Defendants' product caused Plaintiff harm, but rath-

er that their dissemination of false and misleading information, which they knew would be relied upon by the generic manufacturers in generating their own labels, was the direct and proximate cause of Plaintiff's injuries.

(Doc. 83, p. 7–8).

 Although Section 7–2–318 provides a cause of action for breach of warranty to individuals who, lacking privity with a seller/manufacturer, nonetheless were "affected" by that seller/manufacturer's "goods," it does not, by its terms, provide a cause of action for those who were purportedly affected by the warranty language. The Mosleys cite no authority holding that Section 7–2–318 of the Alabama Code—or Alternative B of the UCC, as adopted in any other jurisdiction—provides a cause of action to plaintiffs who were neither purchases, users, or consumers of, nor in contact with, **goods** produced by the manufacturer against whom they claim breach of warranty resulting in personal injury. The undersigned declines the plaintiff's invitation to expand Section 7–2–318 to cover the claim against the brand manufacturers.[9] Accordingly, summary judgment is **GRANTED** as to **Wyeth and Schwarz** on the plaintiffs' breach of warranty claims.

### III. Conclusion

As set forth above the Reglan manufacturers' motion for summary judgment (Doc. 73) is **GRANTED** and all of the Mosleys' claims against Wyeth and

---

9. *See United States v. Bailey,* 419 F.3d 1208, 1217 at n. 13 (11th Cir.2005) (opining that even with respect to a question "of first impression," certification to a state supreme court would not be warranted when a federal court "would really be asking the state court whether it wanted to *expand* its state-law tort to reach [the defendant's] conduct, rather than whether state law, as currently stated, render[ed] [the defendant] liable." *Id.* (emphasis in original)); *accord Taylor v. Phelan,* 9 F.3d 882, 887 (10th Cir.1993) ("As a federal court, we are generally reticent to expand state law without clear guidance from its highest court"); *Couick v. Wyeth,* No. 3:09–cv–210–RJC–DSC, 2010 WL 785952, at *2 (W.D.N.C. Mar. 8, 2010) (declining "to extend North Carolina product liability law beyond what the State's own courts have determined").

Schwarz are hereby **DISMISSED** with prejudice.